410 F.Supp. 225 (1976)
STATE OF NEW YORK, Plaintiff,
v.
LOCAL 144, HOTEL, NURSING HOME AND ALLIED HEALTH SERVICES UNION S.E.I.U. A.F.L./C.I.O., et al., Defendants.
No. 76 Civ. 467.
United States District Court, S. D. New York.
February 26, 1976.
*226 Louis J. Lefkowitz, Atty. Gen., New York City, for plaintiff; Allan N. Smiley, Moses Weintraub, Jesse P. Reisner, New York City, of counsel.
Vladeck, Elias, Vladeck & Lewis, P.C., New York City, for defendants Local 144, Ottley, Kelley and Morgano; Judith P. Vladeck, New York City, of counsel.

OPINION
GAGLIARDI, District Judge.

I
The State of New York ("State") instituted this action in the Supreme Court, New York County, against Local 144, Hotel, Nursing Home and Allied Health Services Union ("Union") for an injunction restraining the Union from engaging in a strike against the member facilities of the Metropolitan New York Nursing Home Association, Inc. ("Nursing Home Association"). The action was allegedly based on the power of the State to protect the health and welfare of its citizens as embodied in New York Public Health Law § 12(5) and § 206 subd. 1(a), the New York State Constitution Article XVII, Section 3, and the inherent police power of the State.
Prior to the return date of an Order to Show Cause obtained in the State Supreme Court and while a temporary restraining order issued by that court was outstanding, defendants removed the action to this Court pursuant to 28 U.S.C. § 1446. The State now moves pursuant to 28 U.S.C. § 1447 to remand this action to the state court on the ground that removal was improvident because the action does not involve a federal claim. The Union opposes remand and cross-moves for dismissal of the complaint.

II
The first and major question is whether this action is grounded in state or federal law. The State contends that the test as to whether removal was proper is whether the complaint, unaided by the answer or petition for removal, states a federal claim. As the complaint here is pleaded solely in terms of state law, the State argues that removal was improvident.
While there is no doubt that the complaint is a substantial and often decisive test as to whether removal was proper, Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); American Car & Foundry Co. v. Kettelhake, 236 U.S. 311, 35 S.Ct. 355, 59 L.Ed. 594 (1915); Tennessee v. Union and Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894), further inquiry must be made as to whether, regardless of artful pleading, in fact the action is one governed by federal law. The applicable principle was set out recently in *227 Coditron Corp. v. AFA Protective Systems, Inc., 392 F.Supp. 158 (S.D.N.Y. 1975):
As a general rule, if plaintiff has a remedy under both state and federal law, it may base its claim solely on state law and thus defeat the defendant's potential right to removal . .. Where federal jurisdiction is exclusive, however, as in the patent field, plaintiff's form of pleading must be carefully scrutinized in order to assure that the congressional determination that such matters are to be adjudicated solely in federal courts has not been violated. . . . In such a context, while the defendant bears a substantial burden in proving that the plaintiff misstates the gravamen of his complaint, the plaintiff's ardent disclaimer of any reliance on federal law is not by itself determinative since the issue is one of subject matter jurisdiction. . . .
392 F.Supp. at 160. (citations omitted)
A similar rule was enunciated in Hearst Corp. v. Shopping Center Network, 307 F.Supp. 551 (S.D.N.Y.1969):
True it is that, where the plaintiff has a right to relief either under federal law or under state law as an independent source of that right, the federal court on removal proceedings may not generally look beyond the face of the initial pleading in the state action to determine whether a federal question is presented. . . . In certain areas, however, this either-or option is no longer available, for Congress has deemed that federal substantive law should altogether preempt and supplant state law. In such a case, where Congress has explicitly said that the exclusive source of a plaintiff's right to relief is to be a federal law, it would be unacceptable to permit that very plaintiff, by the artful manipulation of the terms of a complaint, to defeat a clearly enunciated congressional objective.
307 F.Supp. at 556 (citations omitted) (emphasis original).
The Coditron case involved patent law, a field where the federal courts have exclusive jurisdiction by virtue of 28 U.S.C. § 1338. The Hearst case involved copyright questions where once again the federal courts have exclusive jurisdiction. Id. The case before this court involves a question of labor law and based on the rule of Hearst and Coditron the issues become: a) whether the federal labor laws govern the instant situation and b) whetherif federal law governs such laws pre-empt state law.
In 1974, the National Labor Relations Act ("NLRA") was amended in several ways which bear on the extent of federal regulation of labor disputes in facilities such as those involved in this action. Section 2(2) of the NLRA, which until that time had excluded from the definition of the term "employer" "any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual," was amended to eliminate this exclusion for non-profit institutions. 29 U.S.C. § 152 (1975). A new subdivision 14 of the NLRA, 29 U.S.C. § 152(14) was added which defined the term "health care institution" as:
any hospital, convalescent hospital, health maintenance organization, health clinic, nursing home, extended care facility, or other institution devoted to the care of sick, infirm, or aged person.
A new section 8(g), 29 U.S.C. § 158(g) was created which provided that:
a labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention . . ..
Finally, a new Section 213, 29 U.S.C. § 183, was enacted which provided for a Board of Inquiry which could investigate the issues in dispute, make recommendations, and otherwise assist in the resolution of the labor problems. During the *228 course of this procedure, the status quo would be maintained.
These new federal statutes directly governing labor matters in the health care industry indicate very clearly that federal questions are involved in the instant dispute.
The further question is whether these federal labor laws pre-empt the state regulation. As a general matter it is unassailable that a long line of Supreme Court cases flowing from Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938) and Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953) sets out the principle that state labor regulations do not apply in situations where federal enactments provide uniform national regulation. Justice Frankfurter's statement in this regard in the so-called "Garmon II" case, San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) is particularly instructive:
When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.
359 U.S. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782. (footnote omitted).
In addition, there is support from the legislative history of the NLRA amendments that the new statutes were intended to pre-empt state law. 119 Cong. Rec. 4,597-99, 6,942, 6,991, 7,311 (daily eds. May 2, 7, and 30, 1974); 120 Cong. Rec. 12,104-05 (daily ed. July 10, 1974). The House, in fact, defeated an amendment offered by Representative Quie to insulate state laws from pre-emption under the amendments. As the General Counsel of the National Labor Relations Board has written:
Just as the National Labor Relations Act itself has been consistently viewed as preempting existing state laws, so, too, will state labor relations laws concerning health care institutions now covered by the Act be preempted. Congress was aware of this and fully realized that state legislation would have to yield to a paramount and uniform federal policy.
Memorandum 74-49 from Peter G. Nash, General Counsel, National Labor Relations Board, Guidelines for Handling Unfair Labor Practice Cases Arising Under the 1974 Nonprofit Hospital Amendments to the Act, Section VI F (August 20, 1974) (footnotes omitted).
The State claims that even if the NLRA provisions governing the health care industry would normally pre-empt state laws, these federal statutes only govern relations between labor and management and do not cover or pre-empt the State's interest in protecting its citizens and its exercise of the police power to enjoin strikes in the public interest.[1] This argument does not stand against the language in Garmon II which holds that federal labor laws pre-empt state *229 regulations which are couched in "laws of broad general application rather than laws specifically directed towards the governance of industrial relations." 359 U.S. at 244.[2] Moreover, the argument which the State advances appears to be foreclosed by two decisions of the Supreme Court. In Division 1287 v. Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d 763 (1963), the members of a union had gone out on strike against a public transit company in Missouri. Pursuant to Missouri law, the Governor of Missouri declared that the public interest, health and welfare were jeopardized by a threatened strike against a public transit company, "seized" the company, and ordered that operations continue. The Supreme Court held that the Missouri law was in conflict with the federal labor laws and consequently was preempted. Specifically, the Court rejected the argument that the state action was necessary because of the emergency situation and held that:
where "the state seeks to deny entirely a federally guaranteed right which Congress itself restricted only to a limited extent in case of national emergencies, however serious, it is manifest that the state legislation is in conflict with federal law."
374 U.S. at 82, 83 S.Ct. at 1662, 10 L.Ed.2d at 768, citing Amalgamated Association v. Wisconsin Board, 340 U.S. 383, 394, 71 S.Ct. 359, 365, 95 L.Ed. 364, 375 (1951).
Similarly, in Amalgamated Association, id., (commonly known as Bus Employees v. Wisconsin) the Supreme Court struck down the Wisconsin Public Utility Anti-Strike Law as conflicting with federal labor legislation. There, the threatened strike involved two Milwaukee transport companies and the Wisconsin law banned the strike and required compulsory arbitration. The State of Wisconsin advanced arguments which are similar to those made here by the State of New York. The Court rejected these arguments and set forth the rule which must be followed:
The National Labor Relations Act of 1935 and the Labor Management Relations Act of 1947, passed by Congress pursuant to its powers under the Commerce Clause, are the supreme law of the land under Art. VI of the Constitution. Having found that the (state law) . . . conflicts with that federal legislation, the judgments enforcing the (state law) . . . cannot stand.
340 U.S. at 399, 71 S.Ct. at 368, 95 L.Ed. at 378.
In the present situation, there is no question that Section 8(g) of the NLRA, 29 U.S.C. § 158(g), describes the procedure to be followed by a union in a proposed strike against a health care institution and thus impliedly if not explicitly permits strikes against such employers. Section 7, 29 U.S.C. § 157, and section 213, 29 U.S.C. § 183, which are applicable under the 1974 amendments to all health-care institutionsprofit and non-profit preserve the rights of employees including the right to strike. Thus, it is clear that the federal law permits strikes by the employees involved in this action and if the New York State law would contravene such a right, that law is in conflict with the federal law and is preempted. This matter then is to be determined solely under federal law and removal to this Court was, therefore, proper.

III
The next issue concerns the propriety of an injunction barring the threatened strike.
The parties essentially concede that if federal law governs this action, then the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., determines whether injunctive relief would be proper. Section 4 of the *230 Norris-LaGuardia Act, 29 U.S.C. § 104, provides that:
No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from . . .
(a) Ceasing or refusing to perform any work or to remain in any relation of employment . . ..
This statute constitutes a virtual blanket bar against any order restraining a strike action. The only significant exception to this rule was enunciated by the Supreme Court in Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) in which the Court held that if a collective bargaining agreement provides for binding arbitration of a labor dispute and one of the parties to the dispute refuses to submit to such arbitration, then the courts are not barred by the Norris-LaGuardia provisions from issuing appropriate injunctive relief.
In the present situation, the agreement between the Union and the Nursing Home Association contains a no-strike provision and provides that all labor disputes are to be resolved by binding arbitration. Pursuant to these provisions, an arbitration of the dispute underlying this action took place and the arbitrator upheld the Union's claim. The Nursing Home Association has failed to abide by the decision of the arbitrator and the Union has sought confirmation of the arbitral award in the state courts.
In the Boys Markets case, supra, the Supreme Court wrote that the exception it carved out to the Norris-LaGuardia Act was "a narrow one." 398 U.S. at 253, 90 S.Ct. at 1594, 26 L.Ed.2d at 212. The decision there was that the policy of the federal labor laws favored "peaceful resolution of industrial disputes," id. at 251, 90 S.Ct. at 1593, 26 L.Ed.2d at 211, and thus, in a situation where the parties were ripe for arbitration, a strike would be enjoined and the parties would be directed to proceed to arbitration.
In comparison, in the instant case, the parties have already gone through the arbitration process. Under the collective bargaining agreement, the decision of the arbitrator has "the effect of a judgment upon an award made as provided by the arbitration provisions of the Civil Practice Law and Rules of the State of New York, entitling the entry of judgment in a court of competent jurisdiction against the defaulting party who fails to carry out or abide by the decision." (Agreement Par. 9D). The Union has thus done what is required of it under the agreement to peacefully resolve the controversy. The application to enter judgment is not part of the arbitration proceeding; there is no issue ripe for arbitration; and with arbitration now complete, the union has turned to various other methods to compel payment of the award. This situation then is not the type of situation envisioned by Boys Markets for the granting of an injunction and the Court concludes that the provisions of the Norris-LaGuardia Act bar any injunction and require dismissal of the complaint.
In light of the foregoing, the State's motion to remand this case to the Supreme Court, New York County, is denied; the Union's cross-motion to dismiss the complaint is granted.
It is So Ordered.
NOTES
[1] The curious fact is that while the State argues here that the federal labor laws do not pre-empt the New York State laws, Memorandum 75-78 of May 12, 1975 of the New York Department of Health to All Health Facilities, states:

As of August 1, 1974, all non-profit health facilities have been covered by the provisions of the National Labor Relations Act, and prior state law became inoperative. (emphasis added.)
[2] The State also relies on State of New York v. Local 1115 Joint Board, Nursing Home and Hospital Employees' Division, Supreme Court, Suffolk County, Index No. 76-995 (February 5, 1976). That case was not removed to the federal courts and was determined solely under state law. There is no indication in the decision that the issues raised here were before the state court.