Jeffrey ISAACS, Paul Weber, M. Richard Eschle, Victor San Filippo, John Scarfi and Richard Hubert, as Trustees of the District No. 15 Machinists Pension Fund, Plaintiffs,

v.

GROUP HEALTH, INC. and Martin E. Segal Company, Defendants.

No. 87 Civ. 3614 (RJW).

United States District Court, S.D. New York.

Sept. 4, 1987.

---

Meyer, Suozzi, English & Klein, P.C., Mineola, N.Y., for plaintiffs; Jeffrey G. Stark, Robert M. Archer, Michael A. Ciaffa, of counsel.

Simpson Thacher & Bartlett, New York City, for defendant Martin E. Segal Co.; David W. Sussman, Sharon O. Thompson, of counsel.

Solomon & Rosenbaum, Drechsler & Leff, New York City, for defendant Group Health, Inc.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs Jeffrey Isaacs, Paul Weber, M. Richard Eschle, Victor San Filippo, John

Scarfi, and Richard Hubert, as Trustees of the District No. 15 Machinists Pension Fund (the "Fund"), filed this motion to remand the instant action to state court on two separate grounds. First, they allege that defendant Martin E. Segal Company ("MESCO") waived its right to removal by filing cross-claims and counterclaims in the state court action. Second, they allege that the complaint raises only state law claims that are not preempted by federal law. For the reasons to follow, the Court grants plaintiffs' motion to remand the action to state court.

## BACKGROUND

On or about April 24, 1987, plaintiffs, as trustees of the Fund, instituted an action against MESCO and Group Health Incorporated ("GHI") in New York Supreme Court. During the relevant time, MESCO was the actuary of the Fund and GHI was the computer services provider for the Fund. Plaintiffs allege in their complaint that, as a result of a computer programming error by GHI, reports GHI furnished to MESCO understated the average years of service of plan participants by 40%, and consequently, MESCO's annual actuarial valuation reports were incorrect. Subsequent to GHI's error, MESCO allegedly advised the trustees to seek funding waivers of the minimum funding requirements of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*, ("ERISA") from the United States Internal Revenue Service ("IRS"), but did not advise the trustees to pursue other specific courses of action that would have remedied, in whole or in part, the underfunding of the Fund. The IRS, as a condition to the granting of funding waivers, required the Fund to obtain contribution rate increases from employers of 65% effective July 1, 1986. The Fund has been unable to meet the condition of the funding waivers since the employers are not legally obligated to contribute such sums and have not been willing to do so voluntarily. Plaintiffs assert that MESCO is responsible to the

trustees for breach of contract and negligence.

On May 14, 1987, MESCO served its answer containing two counterclaims against plaintiffs and three cross-claims against co-defendant GHI. As against GHI, it alleged claims of negligence, breach of duty, contribution, indemnification, and breach of contract. As against plaintiffs, it alleged bad faith termination of its contract, and a claim for punitive damages.

On May 26, 1987, MESCO removed this action pursuant to 28 U.S.C. § 1441 by filing a verified petition for removal stating that plaintiffs' complaint is based on allegations with respect to services defendants provided to plaintiffs to enable the Fund to comply with provisions of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, ("LMRA") and ERISA.

Plaintiffs, in the instant action, move to remand the case to New York state court. Plaintiffs set forth two independent grounds for remand. They allege both that defendant MESCO waived its right to removal by filing cross-claims and counterclaims in the state court action and that plaintiffs' complaint does not arise under federal law.

## DISCUSSION

I. Waiver by Defendant of Right to Remove

■ "A party who voluntarily submits to the jurisdiction of a state court by filing a permissive counterclaim thereby waives the right to removal." *Harris v. Brooklyn Dressing Corp.*, 560 F.Supp. 940, 942 (S.D. N.Y.1983); *accord* 1A *Moore's Federal Practice* ¶ 0.157[9] at p. 154 ("[w]here, however, the defendant files a permissive counterclaim, the right to remove is waived."). The rationale for this long-standing policy is that a defendant who asserts a permissive counterclaim in a state court becomes a plaintiff in turn, invoking the jurisdiction of the court in the same action, and, by invoking it, submits to it.[1]

---

**1.** It should be noted that in New York, unlike in the federal judicial system, all counterclaims are permissive. See § 3011, New York C.P.L.R.

*Wilcheck v. Haney,* 38 F.Supp. 345, 354 (W.D.Va.1941) (citing *Merchants Heat & L. Co. v. James B. Clow & Sons,* 204 U.S. 286, 27 S.Ct. 285, 51 L.Ed. 488 (1907)).[2]

■ Similarly, a defendant's cross-claim against a co-defendant while a case is pending in state court, asserted before a petition for removal to federal court is filed, constitutes a waiver of the right to removal. *Baldwin v. Perdue, Inc.,* 451 F.Supp. 373 (E.D.Va.1978).

Since prior to service and filing of its removal petition, MESCO chose to assert in its answer in state court counterclaims against plaintiffs and cross-claims against co-defendant GHI, it consequently waived its right of removal. Moreover, even absent a finding that MESCO waived its right to remove, this Court would, nevertheless, remand the case to state court, as there is no basis for finding that federal law creates plaintiffs' cause of action or that the plaintiffs' right to relief necessarily depends on a substantial question of federal law.

## II. Federal-Question Jurisdiction

Article III of the United States Constitution gives the federal courts power to hear cases "arising under" federal statutes.[3] That grant of power, however, is not self-executing, and it was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction.[4] While the constitutional meaning of "arising under" may extend to all cases in which a federal question is "an ingredient" of the action, *Osborn v. Bank of the United States,* 9 Wheat. 738, 823, 6 L.Ed. 204 (1824), the statutory grant of federal-question jurisdiction has long been construed as conferring a more limited power. *Verlinden B.V. v. Central Bank*

*of Nigeria,* 461 U.S. 480, 494–495, 103 S.Ct. 1962, 1971–1972, 76 L.Ed.2d 81 (1983). Its exact reach has perplexed the federal judiciary for many years. *Rogers v. Platt,* 814 F.2d 683, 687 (D.C.Cir.1987).

There are presently two tests under which an action may present a federal question. The first asks whether federal law creates the cause of action. If so, federal question jurisdiction exists. *West 14th St. Comm. Corp. v. 5 West 14th Owner's Corp.,* 815 F.2d 188, 192 (2d Cir.1987). If state law creates the cause of action, the second test asks whether the plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983); *Republic of Philippines v. Marcos,* 806 F.2d 344, 352 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987).

■ In determining whether the complaint presents a federal question, the court must evaluate it in accordance with the well-pleaded complaint rule. *West 14th St. Comm. Corp. v. 5 West 14th Owner's Corp., supra,* 815 F.2d at 192. This "powerful doctrine" states that whether a claim "arises under" federal law must be determined from what necessarily appears in the plaintiff's statement of his own claim. *Franchise Tax Board v. Construction Laborers Vacation Trust, supra,* 463 U.S. at 9–10, 103 S.Ct. at 2846. *See The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) ("[T]he party who brings a suit is master to decide what law he will rely on ...") A defense that raises a federal question is insufficient to confer federal jurisdiction.

---

**2.** It is significant to note that the defendant in *Haney* "had no intention ever to try the issues in the state court" and that was held to "make no difference." *Briggs v. Miami Window Corp.,* 158 F.Supp. 229, 230 (M.D.Ga.1956). Thus MESCO's contention here that a defendant must submit the merits of the action to the state court before a waiver can be found is without merit.

**3.** *See* Art. III, § 2 ("The judicial power shall extend to all cases, in Law and Equity, arising

under this Constitution, the Laws of the United States, and Treaties made, or which shall be made under their Authority ...").

**4.** Act of March 3, 1875, § 1, 18 Stat. 470. As currently codified, the statute provides "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331.

*Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Since a defendant may remove a case from state court only if a claim could have been brought originally in federal court, 28 U.S.C. § 1441(b), the question of removal jurisdiction must also be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharmaceuticals v. Thompson*, —— U.S. ——, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986).[5]

■ Thus, the propriety of the removal in the instant case turns on whether the case falls within the original "federal question" jurisdiction of the federal courts. Discussing this concept in *Merrell Dow Pharmaceuticals*, the Supreme Court stated that "[t]here is no single, precise definition of ... the phrase 'arising under,'" rather it "masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Id.* (citing *Franchise Tax Board v. Construction Laborers Vacation Trust, supra*, 463 U.S. at 8, 103 S.Ct. at 2845–2846). However, the vast majority of cases that fall within "arising under" jurisdiction fit into the rule formulated by Justice Holmes that "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916).[6] This is not to say that the powers of federal jurisdiction are implicated merely because, as in this case, federal laws are mentioned in the complaint. *See Hearst Corp. v. Shopping Center Network, Inc.*, 307 F.Supp. 551, 556 (S.D.N.Y.1969) (action does not implicate the powers of federal jurisdiction merely because a trademark was mentioned in one of the claims).

Although a non-federal cause of action may arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law," the Supreme Court has emphasized that the federal issue raised must be really substantial. *Franchise Tax Board v. Construction Laborers Vacation Trust, supra*, 463 U.S. at 9, 103 S.Ct. at 2846. In *Merrell Dow Pharmaceuticals*, the Supreme Court stressed that the above statement in *Franchise Tax Board* must be read with caution because "the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow Pharmaceuticals v. Thompson, supra*, 106 S.Ct. at 3235 (footnote omitted). To determine when the federal element is deemed sufficiently substantial the Court must look to the nature of the federal interest at stake. *Id.* at 3236 n. 12.[7]

One corollary of the well-pleaded complaint rule is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. *See Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (section 301 of LMRA is so powerful as to displace entirely any state cause of action for violation of contracts between an em-

---

5. Section 1441 of Title 28 governs the type of actions which may be removed from state to federal court. In relevant part, section 1441 reads:

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

6. The Holmes test has been found more useful for describing the vast majority of cases that comprise federal question jurisdiction than it is for defining the limits of that jurisdiction. *Rogers v. Platt*, 814 F.2d 683, 688 (D.C.Cir.1987). Even as an inclusionary principle, the test has at least one exception. Where a federal cause of action incorporates state law to the extent that it creates an overwhelming predominance of state-law issues, it may not properly be brought in federal court. *Id.* (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, —— U.S. at ——, 106 S.Ct. 3229, 3236 n. 12, 92 L.Ed.2d 650 (1986)).

7. *Merrell Dow Pharmaceuticals v. Thompson*, —— U.S. ——, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) held that when Congress has provided no private right of action under a federal statute, the borrowing of that federal law as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdiction. In contrast, the Court suggested that a question concerning a federal law's constitutionality would be sufficient to confer federal question jurisdiction. *Id.* 106 S.Ct. at 3236 n. 12.

ployer and a labor organization). Thus, in a case where preemption exists, federal law provides the only basis for the plaintiff to obtain the relief that he seeks. *Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers Union,* 511 F.Supp. 1180, 1187 (S.D.N.Y.1981).

■ In such instance, a plaintiff may not defeat removal by refraining from pleading necessary federal questions. *Franchise Tax Board v. Construction Laborers Vacation Trust, supra,* 463 U.S. at 22, 103 S.Ct. at 2852. If a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action (even if containing only state claims for relief) necessarily "arises under" federal law. *Id.* at 21, 103 S.Ct. at 2852. Consequently, the action will be removable as one containing federal claims artfully pleaded. *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.) *cert. denied,* — U.S. —, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). But, where a plaintiff has a remedy under both state and federal law, it may base its claim solely on state law and thereby defeat defendant's potential right to removal. *New York v. Local 144, Hotel, Nursing Home and Allied Health Services Union,* 410 F.Supp. 225 (S.D.N.Y.1976). *See Merrell Dow Pharmaceuticals v. Thompson, supra,* 106 S.Ct. at 3232 (where plaintiffs' causes of action referred to the Federal Food, Drug, and Cosmetic Act ("FDCA") merely as one available criterion for determining whether Merrell Dow was negligent and where the jury could find negligence on the part of Merrell Dow without finding a violation of the FDCA, the plaintiffs' causes of action did not depend necessarily upon a question of federal law and consequently the causes of action were improperly removed to federal court).

■ Furthermore, on a motion to remand a case back to state court, the removing defendant bears the burden of establishing that the case is within the federal court's removal jurisdiction. *Cuomo v. Long Island Lighting Co.,* 589 F.Supp. 1387, 1391 (E.D.N.Y.1984) (citing *Irving Trust Co. v. Century Export & Import,*

*S.A.,* 464 F.Supp. 1232, 1236 (S.D.N.Y. 1979)). The removal statutes are said to "represent congressionally authorized encroachments by the federal courts into the states' sovereignties." *Hamilton v. Hertz Corporation,* 607 F.Supp. 1371, 1374 (S.D. N.Y.1985). Therefore, "the provisions must be strictly construed and their established procedure must be rigidly adhered to. Any doubts as to federal jurisdiction are to be resolved against removal." *Id.*

■ In the instant case, MESCO argues that the claims in the complaint either "arise under" ERISA or raise substantial issues concerning ERISA. MESCO also alleges that ERISA and LMRA preempt plaintiffs' claims so that the complaint is necessarily federal and should not be remanded to state court.

This Court's analysis of the issues posed in this case necessarily begins with an evaluation of the complaint. The essence of plaintiffs' claim is to recover damages resulting from a programming error by GHI, which MESCO failed to discover. In addition, plaintiffs contend that MESCO gave them incomplete advice concerning the options available to compensate for the error. In their complaint, plaintiffs assert causes of action for negligence and breach of contract against both GHI and MESCO. The only area in the complaint where federal law is even mentioned is one paragraph in the "Parties" section. In this paragraph, plaintiffs describe the Fund as a "collectively bargained, multi-employer, jointly administered pension fund, organized and existing pursuant to the provisions of § 302(c)(5) of the Labor Management Relations Act of 1947, as amended, 29 USC § 186(c)(5), and § 3(2) of the Employee Retirement Income Security Act, 29 USC § 1002(2) ..." Complaint, ¶ 1.

Having evaluated plaintiffs' statement of their own claim, it is clear to the Court that, at least on the face of the complaint, federal law does not create plaintiffs' cause of action. Plaintiffs have specifically chosen to rely on state law and, absent preemption, the Court cannot tamper with their choice. Nor do plaintiffs' limited references to ERISA and LMRA for defini-

tional purposes implicate the powers of federal jurisdiction. *See Hearst Corp. v. Shopping Center Network, Inc., supra,* 307 F.Supp. at 556.

Having found that plaintiffs have alleged state claims, the Court must next inquire as to whether resolution of the issues before the Court will "necessarily depend on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust, supra,* 463 U.S. at 28, 103 S.Ct. at 2856. While plaintiffs' breach of contract claims may very well be determined by reference to certain provisions of ERISA, the questions raised will primarily relate to the duties of GHI and MESCO under the contract. It is unlikely that substantial questions concerning either the constitutionality or interpretation of ERISA will be raised. Because there is no reason to believe that a state court could not interpret the contract between the parties as competently as a federal court, the Court sees no significant federal interest in having federal courts resolve these types of private contract disputes. With respect to the negligence claims, ERISA will not necessarily even be implicated because MESCO and GHI could be found to be negligent on the basis of their conduct without reference to ERISA. *See Merrell Dow Pharmaceuticals v. Thompson, supra,* 106 S.Ct. at 3232.

MESCO's contention, that since section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA, plaintiffs "well pleaded" state law claims are preempted because they purportedly "hinge on" the question of whether MESCO fulfilled its obligations under ERISA

and "relate to" the administration of an ERISA pension plan, is erroneous.

While the United States Supreme Court has held that the phrase "relates to" must be interpreted broadly, *see Shaw v. Delta Airlines,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983), the Second Circuit has recognized that there are necessary limits to the reach of that phrase and that ERISA's preemption clause is "neither all encompassing ... nor unlimited" and that claims which do not purport to regulate, directly, or indirectly, the terms and conditions of an ERISA plan, 29 U.S.C. § 1444(c)(2), are not preempted. *Rebaldo v. Cuomo,* 749 F.2d 133, 138 (2d Cir.1984) *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985); *Stone & Webster Eng. Corp. v. Ilsley,* 690 F.2d 323, 329 (2d Cir.1982), *aff'd sub nom.* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983).[8]

In the case at bar, plaintiffs' claims do not "hinge on" whether MESCO failed to meet ERISA's obligations. They rather depend upon plaintiffs' assertions that MESCO breached its contractual and common law duties to the Fund. Nor do plaintiffs' claims "relate to" the administration of the pension plan except in a "tenuous, remote, or peripheral" manner. *Shaw v. Delta Airlines, supra,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

Defendant MESCO argues that because its duties included the provision of "actuarial analysis and reports mandated by ERISA ... as a consequence, ERISA supplies the only standard by which to measure [MESCO's] conduct." MESCO's Memorandum of Law in Opposition to Motion to Remand, at 1. Plaintiff's contention that if ERISA mandated that every pension fund have an attorney on retainer, the negli-

---

**8.** The recent decisions of the Supreme Court cited by MESCO are not to the contrary. *See Metropolitan Life Ins. Co. v. Taylor,* — U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Pilot Ins. Co. v. Dedeaux,* — U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In Taylor, because the plaintiff's claim, although couched purely in state law terms, actually was a claim for disability benefits arising under ERISA, the claim was held to have arisen under federal law and thus was properly removable to federal court. In

*Pilot Life,* the court likewise held that the civil enforcement provisions of ERISA were the exclusive means for plan participants and beneficiaries to assert claims of improper processing of benefits in view of the comprehensive enforcement provisions of ERISA and clear congressional intent to preempt state regulation of benefit claims. The instant case, is clearly distinguishable in that it involves no such claim for benefits.

gence of such attorney, by like reasoning, would be deemed governed by a federal common law, is well taken by this Court. Plaintiff's Reply Memorandum in Support of Remand, at 4. MESCO has presented no cases holding that where a federal statute requires various professional services to be performed, all acts of misfeasance or nonfeasance by professionals must be governed by a federal common law standard. Inasmuch as ERISA nowhere provides for exclusive federal jurisdiction over claims against non-fiduciary service providers who commit malpractice or breach of contract,[9] there is no basis for this Court to find that plaintiffs' state law claims actually present questions of federal law governed exclusively by ERISA.[10]

**9.** In fact, as the New York Court of Appeals' decision in *Retail Shoe v. Reminick*, 62 N.Y.2d 173, 476 N.Y.S.2d 276, 464 N.E.2d 974 (1984), demonstrates, there is no reason to believe that claims by an ERISA plan against a party who renders non-investment services and who is not a fiduciary may not properly be heard in the state courts. The court in *Retail Shoe* actually held that since the preemptive provisions of ERISA govern the judicial determination of breach of fiduciary claims, state courts are foreclosed from entertaining cross-claims by the accountants and consultants against the individual trustees of the plan for contribution or indemnity based on allegations that breach of their fiduciary duties contributed to the losses sustained by the plan. *See Retail Shoe v. Reminick, supra,* 62 N.Y.2d at 176, 476 N.Y.S.2d 276, 464 N.E.2d 974. However, implied in the decision was that the original claims, which were brought in state court by the trustees of the plan against the accountants on the theory that as public accountants and auditors of the Fund they had failed and neglected to detect and report certain misappropriations, were not preempted by ERISA and could properly be heard in state court. This Court is in agreement with plaintiffs' contention that the plaintiffs' claims against its actuary in this case, like the trustees' claim against its accountant in *Retail Shoe*, and unlike the preempted cross-claims against the trustees for "breach of fiduciary duty" in *Retail Shoe*, do not come "squarely within ERISA." *See Retail Shoe, supra,* 62 N.Y.2d at 178, 476 N.Y.S.2d 276, 464 N.E.2d 974. *See also* DOL Interpretive Bulletin 75-5 (29 CFR § 2509.75-5) (an accountant or actuary who renders accounting or actuarial services to an employee benefit plan is not considered a fiduciary to the plan solely by virtue of the rendering of such services, absent a showing that such consultant exercises discretionary authority or control respecting the administration of the

Finally, MESCO's argument that plaintiffs' complaint concerns the services defendants provided to plaintiffs to enable the District No. 15 Machinists Pension Fund to comply with the LMRA and, therefore, comes within the scope of the preemption provisions of that act is without merit. Plaintiffs' claims simply do not come within the preemption provisions of that act because they do not involve "violations of contracts between an employer and a labor organization ... or between any such labor organizations." LMRA § 301(a) (29 U.S.C. § 185).

## CONCLUSION

The voluntary assertion by MESCO of counterclaims against plaintiffs and cross-

plan). The case cited by defendant MESCO in which the Court found that state law claims asserted against actuaries for a pension plan were preempted by ERISA, may be distinguished in that all defendants in that case exercised some form of discretionary authority over the plan and its assets. *See Associates in Adolescent Psychiatry v. Home Life Insurance Co.,* No. 82 C. 4706, slip op. (N.D.Ill. May 11, 1983). In the instant case, however, nothing in the facts indicates that defendants GHI or MESCO exercised any discretionary authority over the plan.

**10.** Cases cited by MESCO to support its claim that ERISA provides a cause of action against non-fiduciaries are distinguishable in that the courts found in both cases that non-fiduciaries had knowingly participated in a breach of trust by an ERISA fiduciary. See *Brock v. Gerace,* 635 F.Supp. 563 (D.N.J.1986) (nonfiduciaries, who had provided services with respect to dental plan as to which trustees of union were alleged to have breached their fiduciary duties by failing to act solely in the interests of the beneficiaries of plan, could be held liable under ERISA for having knowingly participated in fiduciary breaches for their own undue profit); *Foltz v. U.S. News & World Report, Inc.,* 627 F.Supp. 1143, 1168 (D.D.C.1986) (Former employees who brought suit alleging that stock of employer, which constituted corpus of employee profit-sharing plan, was wrongfully and grossly undervalued, could advance claim against independent appraiser which determined value of stock for purpose of benefits each employee received upon separation, under section of ERISA granting a pension plan participant right to obtain equitable relief to redress violations of the Act or the plan, even though appraiser was not a "fiduciary" within meaning of act, based on allegation that appraiser knowingly participated in breach of trust by plan fiduciaries.).

claims against co-defendant GHI, prior to service and filing of its removal petition, constitutes a waiver of the right of removal. Moreover, even absent a finding that MESCO waived its right to removal, this Court would, nevertheless, remand the case to state court, as there is no basis for finding that plaintiffs' state law claims "arise under" federal law. Accordingly, the Court grants plaintiffs' motion to remand the instant case to state court.

It is so ordered.