Brenda S. WESTWOOD and Robert T. Westwood, Plaintiffs,

v.

Darren T. FRONK, Thomas J. Hamacek, Allegheny Plant Services, Inc., Maryland Casualty Company, John Doe, Rskco. Claims Services, Inc., and Richard P. Schwind, Defendants,

and

Beth Dillon and Phillip G. Daniel, Plaintiffs,

v.

Thomas J. Hamacek, Allegheny Plant Services, Inc., Darren T. Fronk, John Doe 1 Through 10, Maryland Casualty Company, Rskco. Claims Services, Inc., and Richard P. Schwind, Defendants.

Nos. 1:01CV26, 1:01CV35.

United States District Court, N.D. West Virginia.

Nov. 7, 2001.

Andrew G. Fusco, Jeffrey A. Ray, The Fusco Legal Group, Morgantown, WV, for Brenda S. Westwood and Robert T. Westwood.

Jeffery L. Robinette, Robinette Law Firm, Morgantown, WV, for Darren T. Fronk.

Harry M. Rubenstein, Kay, Casto & Chaney, PLLC, Morgantown, WV, David M. Thomas, Kay, Casto & Chaney PLLC, Charleston, WV, for Thomas J. Hamacek and Allegheny Plant Services, Inc.

Thomas V. Flaherty, Flaherty, Sensabaugh & Bonasso, Charleston, WV, Louis C. Long, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, Tammy R. Harvey, Flaherty, Sensabaugh & Bonasso, PLLC, Charleston, WV, for Maryland Cas. Co., Rskco. Claims Services, Inc. and Richard P. Schwind.

Jo Marie Pitrolo, Higinbotham & Higinbotham, Fairmont, WV, for Beth Dillon and Phillip G. Daniel.

## MEMORANDUM OPINION AND ORDER

KEELEY, Chief Judge.

### I. FACTS AND PROCEDURAL HISTORY

This case arises from a February 19, 1999 four-vehicle accident on Interstate 79 in Marion County, West Virginia. On that date, a flatbed truck owned by Allegheny Plant Services, Inc. ["Allegheny"] and driven by its employee, Thomas J. Hamacek ["Hamacek"], was traveling northbound on I–79. When the truck lost its dual wheels and axle, this equipment rolled across the median into the southbound lanes of the interstate, striking a vehicle driven by Philip Daniel ["Daniel"]. Brenda Westwood ["Westwood"], who was traveling in a southbound lane, stopped her car in order to avoid the resulting debris, and Darren Fronk's ["Fronk"] car struck the rear of her vehicle. This collision pushed Westwood's car across the median into the northbound lanes, where Beth Dillon ["Dillon"], who was traveling northbound, swerved into a guardrail in an attempt to avoid Westwood's vehicle.

Westwood, Daniel and Dillon were injured as a result of the accident[1], and each (along with Fronk) also sustained property damage. The above-styled civil actions arose from this chain of events.

### A. The Westwood Action

The Westwood plaintiffs filed suit first on January 24, 2001, in the Circuit Court of Marion County, West Virginia ["the Westwood action"]. When Fronk answered that complaint in state court on January 31, 2001, he admitted that jurisdiction and venue were proper, and he also asserted a cross-claim against co-defendants Hamacek and Allegheny, in which he demanded indemnification (or in the alternative, contribution) and compensation for personal injuries and property damages that he had sustained as a result of the accident.

Hamacek and Allegheny then removed the diversity action to this Court, pursuant to 28 U.S.C. §§ 1332 and 1441, et seq. According to the Westwoods, Fronk consented to the removal contingent upon payment of his property damage claim by

---

1. Westwood's husband, Robert, sued for loss of consortium.

Hamacek and Allegheny. Fronk then settled his cross-claim against Hamacek and Allegheny.

### B. *The Dillon Case*

Dillon and Daniel filed a separate civil action ["the *Dillon* case"] in the Circuit Court of Marion County, West Virginia on February 5, 2001.[2] As happened in the *Westwood* action, Hamacek and Allegheny removed the *Dillon* case to this Court based on the parties' diverse citizenship and the amount in controversy. *See* 28 U.S.C. §§ 1332 and 1441, *et seq.*

Fronk did not answer the *Dillon* complaint prior to removal. Instead, on March 15, 2001, he filed an answer in this Court, including a cross-claim against Hamacek and Allegheny for indemnification and contribution identical to the one filed in state court in the *Westwood* action.

### II. *WESTWOOD—MOTION TO REMAND*

The Westwoods' motion to remand their case to state court alleges that Fronk's actions in 1) admitting that jurisdiction and venue were proper in the Marion County Circuit Court, and 2) filing a permissive cross-claim against Hamacek and Allegheny, constituted a waiver of his removal rights. The Westwoods also contend that, because Fronk's consent was invalid, the doctrine of "constructive waiver" bars the remaining defendants from removing the case.

Hamacek and Allegheny have opposed the motion to remand, arguing that, even if Fronk waived his right to removal, the Court can assert supplemental jurisdiction over the action by consolidating it with the *Dillon* case. Agreeing with the *Westwood* plaintiffs that Fronk's actions constitute a

waiver of his right to remove the case, the *Dillon* plaintiffs have filed a brief in the companion case supporting the motion to remand. Citing the doctrine of abstention, they also have asserted that this Court should remand their case if and when it remands the *Westwood* action.

### A. *The Settlement—Partial Dismissal Orders*

Following the full briefing of the motion to remand, the parties engaged in private settlement negotiations and, in each case, settled the plaintiffs' liability claims, as well as the cross-claims of Fronk, Hamacek and Allegheny. Remaining are the plaintiffs' bad faith claims against Maryland Casualty Company, RSKCo. Claims Services, Inc., and Richard Schwind.

### III. *WESTWOOD—PENDING MOTIONS*

Following dismissal of the liability claims in these cases, the issue to be decided in *Westwood* is whether defendant Fronk's actions in state court prior to removal mandate that the remainder of that case be remanded to the Circuit Court of Marion County, West Virginia.[3]

### IV. *ANALYSIS*

Analysis of the merits of the Westwoods' motion to remand requires consideration of whether Fronk waived his right to remove the case before he was dismissed from the action. If he did, the Court must examine whether that waiver precludes adjudication of the Westwoods' claims against the remaining defendants in federal court. Finally, the Court also must evaluate the impact, if any, that remanding the *West-*

---

**2.** The *Dillon* complaint names the same defendants and involves the same defense counsel as the *Westwood* action.

**3.** Also pending is defendant Schwind's motion for leave to file an amended answer.

*wood* action would have upon proceedings in the *Dillon* case.

### A. *Waiver of Removal Rights*

■ The applicable federal statutes, 28 U.S.C. §§ 1446(b) and 1447, do not expressly authorize a court to remand a case on the ground that a defendant or defendants have waived the right to removal. In *Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57 (4th Cir.1991), however, the Fourth Circuit Court of Appeals recognized that a district court could find such a waiver under common law, but only in very limited circumstances:

> [A]lthough a defendant may yet waive its 30–day right to removal by demonstrating a 'clear and unequivocal' intent to remain in state court, such a waiver should only be found in 'extreme situations.' *Id.* at 59 (quoting *Rothner v. City of Chicago*, 879 F.2d 1402, 1416 (7th Cir.1989)).

■ Furthermore, "[a] waiver determination involves a factual and objective inquiry as to the defendant's intent to waive." *Rothner*, 879 F.2d at 1408. Treatises recognize the longstanding proposition that "[p]articipating in state court proceedings, such as seeking some form of affirmative relief [including filing permissive cross-claims], when the defendant is not compelled to take the action…constitutes a waiver of the defendant's right to remove to federal court." 10 James W. Moore, et al., *Moore's Federal Practice*, § 107.18[3][a].

■ In *Aqualon v. MAC Equipment, Inc.*, 149 F.3d 262, 264 (4th Cir.1998), the Fourth Circuit stated that "[a] defendant may waive the right to remove by taking some such substantial defensive action in the state court before petitioning for removal," noting that district courts have found waivers of the right to removal when a defendant has filed substantive defenses in state court. Nevertheless, the Court reiterated *Grubb's* holding that the " 'clear and unequivocal' intent [necessary] to remain in state court…should be found only in 'extreme situations.' " *Id.* at 264.

### 1. *Fronk's Pre–Removal Actions*

According to the Westwoods, Fronk's pre-removal admissions that jurisdiction and venue in state court were proper, as well as his filing of a cross-claim there, demonstrate a "clear and unequivocal intent" to remain in state court. They characterize Fronk's actions as an invocation of the state court's jurisdiction, citing *Baldwin v. Perdue, Inc.*, 451 F.Supp. 373 (E.D.Va.1978), where a district court found that a defendant had waived its right to removal by filing a state court cross-claim. Consequently, they contend, Fronk has waived his right to remove in this case. Fronk, on the other hand, argues that any actions he took were merely "defensive" and, in any event, were not so extreme as to justify remanding the case.

The Court will address the propriety of each of Fronk's pre-removal actions *seriatim.*

### a. *Admission of Jurisdiction and Venue*

■ Fronk correctly notes that his state court admissions of jurisdiction and venue do not impair his right to have the case heard in this Court, especially since federal and state courts have concurrent subject matter jurisdiction. The Court agrees that these admissions, without more, do not constitute the "extreme situation" contemplated in *Grubb*.

### b. *Filing of a Cross–Claim*

The Westwoods' contention that Fronk's state court cross-claim was permissive, and thereby bars his subsequent removal of their case, has greater merit. Fronk

maintains that this cross-claim was compulsory, and that he was obliged to plead his contribution and indemnity claims together with the underlying action or risk a later bar of such claims. Although he suggests that West Virginia public policy compels a claimant to join with the underlying action any intended contribution and indemnity claims, he is incorrect. As discussed below, it is well-established that the filing of a cross-claim in state court equates to a "clear and unequivocal intent" to accede to state jurisdiction.

### 2. *Substantive Law Regarding Cross–Claims*

■ Rule 13(g) of the West Virginia Rules of Civil Procedure plainly provides that cross-claims are not mandatory:

> Cross-claim against co-party.—A pleading **may** state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim therein relating to any property that is the subject matter of the original action. (emphasis added).

In interpreting this Rule, at least one district court within the Fourth Circuit has recognized that "[i]t is undoubtedly correct...that a cross-claim under Rule 13(g) of the West Virginia Rules of Civil Procedure is always permissive." *American Indus. Leasing Company v. Law,* 458 F.Supp. 764 (D.Md.1978). Moreover, *Moore's Federal Practice* states that "[a]ll cross-claims are permissive." 3 James Wm. Moore, et al., *Moore's Federal Practice,* §§ 13.60—13.70 (3d ed. 1997 & Supp. 2001).

In light of these unambiguous principles, Fronk's state court cross-claim clearly was permissive, and the Court must consider whether Fronk waived his right to removal when he filed that cross-claim.

Although the Fourth Circuit Court of Appeals has not specifically addressed this issue, Fronk's actions closely mirror those of the corporate defendant in *Baldwin,* 451 F.Supp. at 375, who filed a permissive cross-claim in state court prior to petitioning for removal. The district court in that case characterized the defendant's action as "volitional in nature" and, under the law of Virginia, an act by which it affirmatively submitted to the jurisdiction of the state court. *Id.* On these grounds, the court determined that the defendant had waived its right to remove the case.

■ Here, in a similar vein, the volitional nature of Fronk's actions supports the Westwoods' argument that he waived his right to removal. His affirmative action in filing a permissive state court cross-claim expressed Fronk's "clear and unequivocal" intent to accede to state court jurisdiction. *See also Schmitt v. Insurance Co. of N. Am.,* 845 F.2d 1546, 1548 (9th Cir.1988), *superceded by statute on other grounds in Moore v. Permanente Med. Group, Inc.,* 981 F.2d 443 (9th Cir.1992) (holding that the filing of a permissive cross-claim constitutes waiver of a right to remove); and *Isaacs v. Group Health, Inc.,* 668 F.Supp. 306, 308–309 (S.D.N.Y.1987) (same). Consequently, this case falls squarely within the "extreme situation" recognized in *Grubb,* in which a defendant waives his right to removal.

### B. *Effect of One Defendant's Waiver Upon Co–Defendants' Removal*

■ This conclusion requires the Court to determine whether Fronk's waiver bars the other defendants in *Westwood* from removing the case to federal court. Whether Fronk's waiver of his right of removal is analyzed as a "constructive waiver" of the removal rights of the remaining defendants, or a violation of the

rule of unanimity, the answer is the same: removal in this case is improper.

### 1. *Constructive Waiver*

There is very little case law discussing whether one co-defendant's waiver of the right to remove constitutes a constructive waiver with respect to the rights of the remaining defendants. Courts that have decided the issue have disagreed about the proper result. A district court in the Eastern District of Virginia, for example, has held that a second defendant cannot remove a case after another defendant waives removal:

> [Defendant] Amoco's waiver of its right to remove constitutes a constructive waiver by each co-defendant of its right to remove. The defendants all joined in the notice of removal, and came to federal court together. They must now return together to state court in order to avoid the inefficiencies and injustices that would result from separate trials of the same action. ·

*Estate of Krasnow v. Texaco, Inc.,* 773 F.Supp. 806, 809 (E.D.Va.1991) (Cacheris, J.). In its ruling, the court relied upon the early case of *Fletcher v. Hamlet,* 116 U.S. 408, 6 S.Ct. 426, 29 L.Ed. 679 (1886), as well as *Crocker v. A.B. Chance, Co.,* 270 F.Supp. 618 (S.D.Fla.1967), both of which held that one defendant's waiver of the right to remove also bars removal by a subsequently joined defendant.

More recently, however, a district court for the Southern District of Texas reached a contrary conclusion, finding that the filing of motions to transfer venue and for summary judgment in state court by a fraudulently joined individual defendant did not result in the waiver of a corporate co-defendant's right to removal. *Custom Blending Int'l, Inc. v. E.I. DuPont De Nemours & Co.,* 958 F.Supp. 288, 289 (S.D.Tex.1997). The court held that each

defendant must be clear and unequivocal in its intent to waive the right to removal. Since DuPont, the defendant, had not manifested any such intent to remain in state court, the court found no constructive waiver. *Id.* at 289.

The facts in *Custom Blending* are decidedly different from those in the case at bar, where there is no ·evidence that any defendants have been fraudulently joined. Based on Fronk's waiver of his right to removal, therefore, his co-defendants are deemed also to have constructively waived their right of removal.

### 2. *Rule of Unanimity*

In a multi-defendant case, all defendants must consent to removal. This "rule of unanimity...does not require that each defendant sign the notice of removal; however, it does require that each defendant officially and unambiguously consent to a removal petition filed by another defendant, within thirty (30) days of receiving the complaint." *Martin Oil Co. v. Philadelphia Life Ins. Co.,* 827 F.Supp. 1236, 1237 (N.D.W.Va.1993). The petitioning defendants bear the burden of establishing compliance with the requirements of the removal statute, including the requirements of the joinder or timely consent of all defendants. *Adams v. Aero Serv. Int'l, Inc.,* 657 F.Supp. 519, 521 (E.D.Va.1987).

If any defendant refuses, or is legally unable to consent to removal, the action cannot be removed. *See Hewitt v. City of Stanton,* 798 F.2d 1230, 1232 (9th Cir.1986); *Doe v. Kerwood,* 969 F.2d 165, 167 (5th Cir.1992). *See also Chicago, R.I. & P.R. Co. v. Martin,* 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *Getty Oil Corp. v. Ins. Co. of No. Am.,* 841 F.2d 1254, 1261 (5th Cir.1988). Based on these cases, Fronk's waiver plainly requires that the *Westwood* action be remanded.

In *Bazilla v. Belva Coal Co.*, 939 F.Supp. 476, 478–79 (S.D.W.Va.1996), Chief District Judge Haden confronted an analogous situation in which each of seven defendants was accorded the opportunity to remove within thirty days of service, but, at best, only four of them filed, joined or consented to timely removal notices. Concluding that the three defendants who had not filed timely notices of removal had waived the right to later join in the removal petition, the court remanded the entire case to state court.

A district court in South Carolina also has analyzed whether an original defendant's failure to timely remove "is deemed a waiver of the right of removal which is binding on [a later added defendant]," and has held that it does. *See Beasley v. Goodyear Tire & Rubber Co.*, 835 F.Supp. 269, 273 (D.S.C.1993) (Norton, J.).

 Finally, public policy concerns support the conclusion that removal by other defendants is improper once a defendant has waived his right to removal. In *Dansberger v. Harford County Educ. Ass'n, Inc.*, 2000 WL 1593486, at *3 (D.Md. Oct.20, 2000), the Court noted:

> Inherent in the requirement that all defendants join the petition for removal, is that one defendant's actions will have a binding effect on the rights of the other defendants. If one defendant decides not to join, the case may not be removed, despite the desires of any other defendants. Similarly, when a first-served defendant does not take action to remove the case in a timely manner, the

defendant has essentially chosen to remain in state court, a decision that is binding on the later served defendants.

The *Westwood* defendants' petition for removal is defective because Fronk's waiver precluded him from joining in the petition for removal or consenting to the removal. *See Martin Oil*, 827 F.Supp. at 1237.[4]

Accordingly, because of Fronk's waiver of his right of removal, the Court **REMANDS** the *Westwood* action to the Circuit Court of Marion County, West Virginia.

## C. *Abstention/Supplemental Jurisdiction*

 Because both the *Westwood* and *Dillon* cases involve the same set of operative facts, the *Dillon* plaintiffs argue that separate jury trials inexorably would lead to the possibility of inconsistent verdicts, and they seek remand of their bad faith claim under the *Colorado River*[5] abstention doctrine so that it can be tried with *Westwood*. The *Westwood* defendants maintain that the Court should take supplemental jurisdiction[6] over their case and try it in conjunction with *Dillon*.

 Generally speaking, the United States Supreme Court has established that, under exceptional circumstances, a district court may abstain from adjudicating a controversy before it "for reasons of wise judicial administration." *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. 1236. Before determining that abstention is warranted, however, the district court must first determine whether the state and fed-

---

**4.** Although defendants with separate and independent claims may be excepted from the unanimity requirement, this Court finds that a bad faith claim is not a separate and independent claim permitting removal by the insurers or insurer-employees in this case. *See Moore v. United Services Auto. Ass'n*, 819 F.2d 101, 103 (5th Cir.1987) (recognizing different interpretations among the district courts and

holding that a bad faith claim is not a separate controversy).

**5.** *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**6.** 28 U.S.C. § 1367(a).

eral proceedings are parallel. *New Beckley Mining Corp. v. International Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir.1991). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.*

█ Once the court determines that the proceedings in state court and federal court are parallel, the Court must consider those factors set forth in *Colorado River* and *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), to determine if the circumstances are such that it is proper for the court to abstain.

The factors to be considered include the following: (a) the assumption by either court of jurisdiction over property; (b) the inconvenience of the federal forum; (c) the desire to avoid piecemeal litigation; (d) the order in which the courts obtained jurisdiction; and (e) the source of applicable law. *Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236; *New Beckley Mining Corp.*, 946 F.2d at 1073–74 (citing *Moses H. Cone*, 460 U.S. at 15–16, 23, 103 S.Ct. 927).

█ Despite the fact that the parties resolved the underlying liability portions in each of these cases, the issues of abstention and supplemental jurisdiction merit further examination because the remaining claims pertaining to unfair claims settlement practices and common law "bad faith" are parallel: they involve substantially the same parties litigating substantially the same issues in different forums. The two cases concern identical claims of unfair claims settlement practices and "bad faith" arising from the same set of operative facts, and both involve the same insurance company and adjuster.

Having determined that the cases are parallel, the Court must weigh other, pertinent factors prior to deciding whether to abstain from adjudicating the *Dillon* case. First, the state court assumed jurisdiction over *Dillon* (and, for that matter, *Westwood*) before either case was removed to federal court. Second, the geographic location of this federal court is no less convenient to either party than the state forum, because the two points of holding court are less than 25 miles apart. Third, abstention would promote the objective of avoiding piecemeal litigation. Fourth, neither court has assumed jurisdiction over property. Finally, the remaining claims, although neither unique nor unsettled, involve issues of state statutes and common law and, thus, are appropriate for adjudication in state court.

On balance, the first, third and fifth factors from *Colorado River/Moses H. Cone* favor abstention, while the other two are neutral. A decision to abstain from adjudicating the *Dillon* case in order to avoid the otherwise inevitable possibility of inconsistent verdicts is, therefore, appropriate.

## V. CONCLUSION

The Court **GRANTS** the motion to remand the *Westwood* action, and **ABSTAINS** from adjudicating the *Dillon* case. The Circuit Court of Marion County, West Virginia will handle all further proceedings in each case.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record herein and to the Clerk of the Circuit Court of Marion County, West Virginia.