949 F.2d 960
 14 Employee Benefits Cas. 2188
 CONSOLIDATED BEEF INDUSTRIES, INC., individually, and as a
fiduciary under the C.B.I., Inc. Pension Plan,
Appellant/Cross-Appellee,
v.
NEW YORK LIFE INSURANCE COMPANY; New York Life Insurance
and Annuity Corporation, Appellee/Cross-Appellant.
 Nos. 90-5131, 90-5164.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 12, 1990.
Decided Nov. 19, 1991.
 
 Elizabeth H. Martin, St. Paul, Minn., argued (Elizabeth H. Martin, Donald W. Niles and John D. Docken on the brief), for appellant.
 Gary J. Haugen, Minneapolis, Minn., argued (Gary J. Haugen and Wayne S. Moskowitz on the brief), for appellee.
 Before McMILLIAN and FAGG, Circuit Judges, and ARNOLD,* District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Consolidated Beef Industries, Inc. (CBI), appeals from a final order entered in the United States District Court[1] for the District of Minnesota, granting summary judgment in favor of New York Life Insurance Company and New York Life Insurance and Annuity Corporation (collectively New York Life or NYL). The district court held that the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. (ERISA), pre-empted CBI's state law claims alleging misrepresentation, breach of contract and implied warranties, and fraudulent representation and that, as a matter of law, NYL was not an ERISA fiduciary.[2] For reversal, CBI argues the district court erred in holding that (1) its state law claims were pre-empted by ERISA and (2) NYL and its agent, Robert Billings, were not fiduciaries under ERISA. NYL cross-appeals the district court's denial of its motion for attorney's fees[3] claiming that the denial of attorney's fees was an abuse of discretion. For the reasons discussed below, we affirm both the district court's grant of summary judgment and denial of attorney's fees.
 
 FACTS
 
 2
 In early 1985, an agent of NYL solicited CBI to provide, for CBI's employees, a § 401(k) "turnkey" plan, which included annuities from NYL and life insurance policies from North American Life and Casualty Company (NALAC). The § 401(k) turnkey program was one of the first of its kind and was the result of a joint venture between NYL and NALAC. NYL's role involved providing the personnel to sell the program and developing training programs with respect to the § 401(k) plan. Pension Planners of North American (PPNA), a NALAC subsidiary, was to provide the plan administration services.
 
 
 3
 CBI was solicited by NYL agent Robert Billings. Billings had a special agreement with another NYL agent, Frank Likas, whose son was a co-owner of CBI, whereby Likas received a certain percentage of the commission on Billings' sales to CBI. Billings informed CBI that he would handle the enrollment process and all of the initial paperwork. He additionally told CBI that NYL would provide the documents for the § 401(k) plan and obtain IRS approval. CBI dealt exclusively with Billings during the installation of the § 401(k) plan and had no independent retirement advisor. Billings solicited employees to join the § 401(k) plan and earned commissions on each annuity and life insurance policy that he sold under the plan. Participation in the plan was voluntary and all contributions came from CBI employees.
 
 
 4
 On December 5, 1985, after the enrollments were completed, NYL presented CBI with the plan documents. CBI did not, however, receive its own copies of the documents until June of 1986. These documents define the "Plan Administrator" as the "named fiduciary appointed by the Employer (CBI) to administer this Plan." CBI named itself as the Plan Administrator and its vice-president of finance as the plan's Trustee. The plan documents contain an agreement whereby PPNA was hired to administer the plan.
 
 
 5
 Almost from the beginning, problems arose surrounding the administration of the § 401(k) plan. These included incorrect interest rates on annuity contracts, late crediting of plan contributions, inaccurate billing, lack of information on use of the plan and its operation, delay in obtaining IRS approval, lack of annual statements, and surrender charges on termination and hardship withdrawals. NYL acknowledged responsibility for the improperly credited interest rates, but denied responsibility for all other problems. Upon the advice of NYL, CBI later changed the plan administrator from PPNA to DCA, Inc. The problems continued and, in June 1988, CBI terminated NYL's annuities and NALAC's life insurance policies.
 
 
 6
 In July 1988, CBI filed suit against NYL alleging state law claims for breach of contract, breach of implied warranties of fitness and merchantability under the Uniform Commercial Code, statutory and common law misrepresentation, breach of fiduciary duty, and negligent failure to train and supervise agents. CBI also asserted a claim for breach of fiduciary duty under ERISA, 29 U.S.C. § 1109(a). On November 2, 1989, the district court granted NYL's motion for summary judgment finding that CBI's state law claims were pre-empted by ERISA and that, as a matter of law, NYL was not an ERISA fiduciary. CBI appeals from this judgment. On January 11, 1990, the district court denied NYL's motion for attorney's fees. NYL cross-appeals from this order.
 
 GRANT OF SUMMARY JUDGMENT
 
 7
 We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).
 
 A. Pre-emption
 
 8
 For reversal, CBI first argues that the district court erred in finding its state law claims pre-empted. ERISA contains a broad pre-emption provision:
 
 
 9
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
 
 
 10
 29 U.S.C. § 1144(a). "The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." FMC Corp. v. Holliday, --- U.S. ----, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). The Supreme Court has defined " 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985), quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983) (Shaw ). Yet the Court admits that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner" to be pre-empted. Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.
 
 
 11
 Given ERISA's broad pre-emption provision, state law claims for improper plan administration are pre-empted. See Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208 (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981) (Dependahl ). CBI argues that its claim is distinguishable from Dependahl because its claim arises from NYL's pre-plan actions. Specifically, CBI argues that its claims arise out of the purchase of the § 401(k) plan and not the administration of plan and, therefore, they are "too tenuous and remote" to be pre-empted by ERISA. CBI alleges that its case is similar to Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (Mackey ). In Mackey, the Supreme Court found that Georgia's general garnishment statute was not pre-empted while the antigarnishment statute which specifically referred to ERISA was pre-empted. Id. at 830-31, 108 S.Ct. at 2185-86. Thus, the Court allowed Georgia to permit the garnishment of ERISA funds. CBI also points to Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (Fort Halifax ), as a case where ERISA pre-emption was rejected. Fort Halifax involved a Maine statute which required employers to provide a one-time severance payment to employees at the time of a plant closing. The Supreme Court found that this did not relate to any employee benefit plan under ERISA. Id. at 7, 107 S.Ct. at 2215.
 
 
 12
 The facts of the instant case are clearly distinguishable from these decisions. CBI's claims, such as inaccurate billings, incorrect interest rates and lack of accurate annual statements to plan participants, arise directly from the administration of the plan. CBI attempts to argue that NYL should have foreseen these difficulties and thus its claims arose pre-plan and are not pre-empted. This assertion is simply not supported by the record because CBI's primary concern is whether the plan was properly administered. Additionally, even if CBI's claims involved misrepresentation in the sale of the § 401(k) program, its claims still relate to the employee benefit plan. See Farlow v. Union Cent. Life Ins. Co., 874 F.2d 791, 794 (11th Cir.1989); Childers v. Northwest Airlines, Inc., 688 F.Supp. 1357, 1364 (D.Minn.1988). Thus CBI's claims "relate to" an employee benefit plan and therefore are pre-empted.
 
 
 13
 CBI further argues that in order for a state law claim to be pre-empted, there must be an ERISA remedy available. Because, as discussed below, the district court found that NYL was not a fiduciary under ERISA, CBI is left with no ERISA remedy. CBI asserts that Dependahl stands for the proposition that a state law claim is pre-empted when Congress intended to occupy the field and Congress has provided a remedy. While Dependahl does state those two factors as the reasons for finding pre-emption, Dependahl, 653 F.2d at 1215, the case does not stand for the proposition that both factors are always necessary. The Ninth Circuit points out that because ERISA allows equitable relief against both fiduciaries and non-fiduciaries, Congress intended pre-emption to apply even where no ERISA fiduciary remedy existed. Gibson v. Prudential Ins. Co., 915 F.2d 414, 417-18 (9th Cir.1990); accord Howard v. Parisian, Inc., 807 F.2d 1560, 1564 (11th Cir.1987). Thus whether NYL is a fiduciary under ERISA or not does not affect our ERISA pre-emption analysis, and we hold CBI's state law claims are pre-empted by ERISA.
 
 B. NYL's Status as a Fiduciary Under ERISA
 
 14
 CBI next argues the district court erred in finding that NYL is not a fiduciary under ERISA. CBI asserts three theories as to why NYL is a fiduciary under ERISA: (1) Billings, NYL's agent, acted as a plan fiduciary through his control over plan assets and investment advice for a fee; (2) NYL is a fiduciary by virtue of its duty to exercise due care in training and supervising its employees; and (3) NYL, even if not technically a plan fiduciary, remains liable because it participated in a breach of trust under ERISA. ERISA defines a plan fiduciary as follows:
 
 
 15
 Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he [or she] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he [or she] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he [or she] has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 16
 29 U.S.C. § 1002(21)(A). The term fiduciary is to be broadly construed and a person's title does not necessarily determine if one is a fiduciary.
 
 
 17
 CBI first alleges that Billings exercised discretionary control and rendered investment advice for a fee thus making him a plan fiduciary. CBI asserts that it relied heavily on the advice of Billings so that a factfinder could find Billings had authority or control over the plan assets. Further, CBI claims that this advice is "rendering investment advice for a fee" as defined in 29 C.F.R. § 2510.3-21(c). CBI's claim is based on Billings' marketing and selling the § 401(k) plan. CBI alleges that Billings made more commissions by selling the § 401(k) plan because he was able to sell more annuities than he otherwise could have. Additionally, Billings recommended the change in plan administrator.
 
 
 18
 The record does not support these assertions. The plan documents explicitly name CBI as fiduciary and PPNA as plan administrator. Both of CBI's claims are based upon the "investment advice" given by Billings because it was through this advice that CBI alleges Billings exercised control over the management of the plan. However, Billings was not providing investment advice, but was instead selling his company's financial products. He recommended CBI purchase NYL's "products" and received commissions for these sales. These commissions were the only fees which Billings received. Billings' involvement in the plan was substantially less than that of the defendant Weber in Monson v. Century Mfg. Co., 739 F.2d 1293 (8th Cir.1984) (Monson ). The agent defendant in Monson was held to be a fiduciary because he had worked on the amendments to the plan, met with company's independent accountant, "consulted on plan investments and had the authority to make some press releases without [the owner's] prior approval." Id. at 1303. Billings had no such power. Additionally, Billings' role was substantially different from the agent in Miller v. Lay Trucking Co., 606 F.Supp. 1326 (N.D.Ind.1985), who was found to be a fiduciary because he performed the role of a plan administrator, signed documents as the plan administrator, and was responsible for choosing among several plans. Id. at 1335. Billings did not recommend which stocks to invest in as did the stockbroker who was found to be a fiduciary under ERISA in Stanton v. Shearson Lehman/American Express, Inc., 631 F.Supp. 100, 102-04 (N.D.Ga.1986) (Stanton ). Billings was merely a salesperson earning commissions and not a fiduciary under ERISA. See American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc'y, 841 F.2d 658, 664-65 (5th Cir.1988).
 
 
 19
 Second, CBI asserts that NYL is liable as a direct fiduciary, even if Billings is not a fiduciary. CBI's claim is based upon NYL's duty to exercise due care in the training and supervising of its employees. CBI relies on Stanton, 631 F.Supp. at 105, for this assertion. While we do not adopt the reasoning in Stanton, the instant case is distinguishable on the facts. In Stanton, the brokerage firm retained to handle the ERISA funds was considered a fiduciary because its unsolicited recommendations to invest in certain securities were blindly followed by the plan trustee. Id. NYL had no such control over CBI's ERISA funds. NYL simply sold CBI annuities; it did not recommend specific investments beyond its products.
 
 
 20
 Third, CBI asserts that NYL has non-fiduciary liability. Relying on Freund v. Marshall & Ilsley Bank, 485 F.Supp. 629 (W.D.Wis.1979) (Freund ), CBI asserts that a person who knowingly participates in a breach of trust under ERISA can be held liable under ERISA even though not a fiduciary. This court expresses no opinion on the validity of non-fiduciary liability because even under the standards in Freund, CBI has not proven NYL is liable as a non-fiduciary. CBI has not shown that NYL participated in a breach of trust with an ERISA fiduciary. CBI claims that NYL developed a defective § 401(k) plan in conjunction with NALAC and PPNA. The mere marketing of the § 401(k) plan does not implicate fiduciary conduct, nor has CBI proven that the § 401(k) plan was actually defective, only that it was administered poorly. NYL was not involved in the administration of the plan or any breach of trust that may have occurred in the administration of the plan.
 
 
 21
 Therefore, we affirm the district court grant of summary judgment for NYL.
 
 CROSS-APPEAL FOR ATTORNEY'S FEES
 
 22
 NYL cross-appeals the district court's denial of its motion for attorney's fees. The district court found that NYL had "not established the requisite lack of merit to prevail on the attorney's fee motion." Consolidated Beef Indus., Inc. v. New York Life Ins. Co., Civil File No. 3-88-0442 (D.Minn. Jan. 11, 1990) (order denying motion for attorney's fees). NYL argues that the district court should have awarded it attorney's fees under ERISA, 29 U.S.C. § 1132(g)(1), which states: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." NYL contends that CBI's lawsuit was protracted, expensive and unnecessary, and that CBI acted unreasonably in rejecting all efforts at resolving their dispute without litigation.
 
 
 23
 This court's standard of review of an order awarding or denying attorney's fees is abuse of discretion. Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan, 874 F.2d 496, 500 (8th Cir.1989) (Gunderson ). NYL argues that the district court should apply the "prevailing plaintiff" standard established in Gunderson and Landro v. Glendenning Motorways, Inc., 625 F.2d 1344 (8th Cir.1980) (Landro ), to "prevailing defendants." Under that standard, "[a] prevailing plan beneficiary or participant 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " Gunderson, 874 F.2d at 500, quoting Landro, 625 F.2d at 1356. We express no opinion on the appropriate standard for a prevailing defendant, but even under the "prevailing plaintiff" standard, the district court did not abuse its discretion in denying NYL's motion for attorney's fees. CBI's claims were serious and involved complicated legal issues that were sufficiently debatable to justify plaintiff's pursuit of the claims, and therefore an award of attorney's fees would be unjust.
 
 
 24
 Accordingly, we affirm both the district court grant of summary judgment and the order denying NYL attorney's fees.
 
 
 
 *
 The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas, sitting by designation
 
 
 [1]
 The Honorable Paul A. Magnuson, United States District Court for the District of Minnesota
 
 
 [2]
 Consolidated Beef Indus., Inc. v. New York Life Ins. Co., Civil File No. 3-88-0442 (D.Minn. Nov. 2, 1989) (order granting summary judgment)
 
 
 [3]
 Id. (Jan. 11, 1990) (order denying motion for attorney's fees)