Russell RICHARDS, R.L. Anderson, Anita Billings, Margaret H. Petersdorf, Dorothy Holst, Trustees of Office and Professional Employees International Union Local 12, AFL–CIO, Retirement Plan, Plaintiffs,

v.

UNION LABOR LIFE INSURANCE COMPANY, a Maryland corporation, and John P. Morgan, F.S.A., Defendants.

OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION LOCAL 12, AFL–CIO RETIREMENT PLAN, Plaintiff,

v.

UNION LABOR LIFE INSURANCE COMPANY, a Maryland corporation, and John P. Morgan, F.S.A., Defendants.

Civ. Nos. 4–92–719, 4–92–720.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 30, 1992.

Robert C. Bell, Peterson, Bell, Converse & Jensen, St. Paul, Minn., for plaintiffs.

Lawrence C. Brown, Gordon B. Conn, Jr., Faegre & Benson, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motions to dismiss. The motions will be denied.

### FACTS

These motions involve two separate actions. The first was brought by the Office and Professional Employees International Union Local 12, AFL–CIO, Retirement Plan (plan). The second action was brought by Russell Richards, R.L. Anderson, Anita Billings, Margaret H. Petersdorf, and Dorothy Holst, the individual trustees (trustees) of the plan. The plan's complaint and the trustees' complaint are virtually identical, alleging negligence by defendants Union Labor Life Insurance Company (ULLIC) and John P. Morgan, F.S.A., in connection with providing actuarial services to the plan. Plaintiffs originally brought these actions in state court. On July 27, 1992, defendants removed both cases to federal court, asserting both federal question and diversity jurisdiction. Defendants have now moved for dismissal of the actions on the grounds that the Employee

Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, (ERISA) preempts the claims.

For the purposes of these motions, the factual allegations of the complaints are taken to be true. The plan is an employee benefit plan pursuant to ERISA. The purpose of the plan is to provide retirement and other benefits to members of the union. Pursuant to ERISA section 103(a)(4)(A), the trustees are required to engage an "enrolled actuary." Under the relevant ERISA provisions, the enrolled actuary is required to prepare an annual actuarial statement of the plan. *See* 29 U.S.C. § 1023(a)(4)(A). The actuarial statement must be based on an actuarial valuation to be made at least every third plan year. Plaintiff retained defendant Union Labor Life Insurance Company. Defendant John Morgan, an in-house actuary employed by Union Labor, was designated as the enrolled actuary for the plan.

Defendant Morgan prepared an actuarial valuation for the fiscal year ending July 31, 1985. Plaintiffs allege that that actuarial valuation negligently transposed certain figures which created an illusion that the plan was grossly overfunded and, because of the overfunding, the plan was in danger of losing its tax exemption for employer contributions. To remedy the perceived overfunding, the plan increased its obligations to participants and subsequently published the increase in benefits to plan participants. Many plan participants, relying on the information that their pensions would be increased, retired. Plaintiffs allege that the erroneous actuarial report constituted professional malpractice and a breach of contract. Plaintiffs further allege that defendants prepared an actuarial valuation for the fiscal year ending July 31, 1986 which restated the erroneous calculations.

On July 31, 1988, defendants filed an actuarial valuation showing severe funding problems and informed plaintiffs that the plan was grossly underfunded and did not have the necessary funds to meet its pension obligations. On July 27, 1989, plaintiffs discovered the alleged actuarial error

of defendants and plaintiff then adopted a resolution attempting to rescind the increase in benefits to beneficiaries. However, the plan is prohibited by law from reducing the vested obligations earned by the beneficiaries of the plan. Plaintiffs maintain that, because of defendants' negligence, they are now obligated to pay pension benefits far in excess of the funds available. The underfunding allegedly exceeds $3 million.

Defendants have moved for dismissal of the claims on the grounds that they are preempted by ERISA.

## DISCUSSION

### I. *Standard for a Motion to Dismiss*

■ In reviewing a motion to dismiss for failure to state a claim the Court presumes all factual allegations to be true and all reasonable inferences from those allegations are construed in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Palmer v. Tracor, Inc.,* 856 F.2d 1131, 1132 (8th Cir.1988). The appropriate inquiry is not whether plaintiff will ultimately prevail but whether he will be allowed to introduce evidence to support his claims. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. Because dismissal on the pleadings is an extreme remedy it is not favored by the courts and is employed only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). *Robinson v. MFA Mutual Insurance Co.,* 629 F.2d 497, 500 (8th Cir.1980). *See also Palmer,* 856 F.2d at 1132.

### II. ERISA Preemption

ERISA contains a broad preemption provision, which provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title

and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added). "The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The Supreme Court has defined " 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). However, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner" to be preempted. *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

The leading case in the Eighth Circuit is *Consolidated Beef Industries, Inc. v. New York Life Ins. Co.*, 949 F.2d 960 (8th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992). In *Consolidated Beef*, plaintiffs brought state law claims alleging misrepresentation, breach of contract and implied warranties, and fraudulent representation. In administering the plan, defendants allegedly were responsible for several problems including incorrect interest rates on annuity contracts, late crediting of plan contributions, inaccurate billing, lack of information on use of the plan and its operation, delay in obtaining IRS approval, lack of annual statements, and surrender charges on termination and hardship withdrawals. The district court granted summary judgment for defendants finding that ERISA preempted the state law claims.

The United States Court of Appeals for the Eighth Circuit affirmed. The court found that "[g]iven ERISA's broad preemption provision, state law claims for improper plan administration are pre-empted." *Consolidated Beef*, 949 F.2d at 963. The court stated that claims such as inaccurate billings, incorrect interest rates, and lack of accurate annual statements to plan participants arise directly from administration of the plan. The court held that the plaintiff's "primary concern" was whether the plan was properly administered and, thus, the claims "relate[d] to" an employee benefit plan and were preempted.

In this jurisdiction, at least one court has concluded that ERISA does not preempt state law malpractice claims. *Anoka Orthopaedic Associates, P.A. v. Mutschler*, 773 F.Supp. 158 (D.Minn.1991). In *Mutschler*, in the context of deciding whether a plan's beneficiaries may assert an ERISA-based cause of action for legal malpractice on behalf of the plan, the court stated that "ERISA … does not purport to define a beneficiary's right to bring state malpractice claims nor does it preempt such claims." *Id.* at 168.

Several cases from other jurisdictions have also held that ERISA does not preempt malpractice claims. Both the Third and Seventh Circuits have held that there is no implied cause of action under ERISA for professional malpractice because Congress did not intend to preempt this area of state law. In *Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146 (3d Cir.1989), the court stated that "state law has traditionally prescribed the standards of professional liability and, in the absence of clear indicia in the act or legislative history, we are reluctant to ascribe to Congress an intention to intrude in this area." *Id.* at 1152–53. The court explained its reasoning in a footnote:

> We acknowledge appellants' argument that ERISA's broad preemption provision, 29 U.S.C. § 1144(a), preempts state professional malpractice claims as they relate to ERISA, but we are not persuaded by it.

In *Mackey v. Lanier Collection Agency & Service*, [486] U.S. [825], 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), (holding that a general Georgia garnishment statute as applied to welfare plans was not preempted by ERISA), the Court stated that:

ERISA plans may be sued in a second type of civil action, as well. These cases—lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan—are relatively commonplace. Petitioners and the United States (appearing here as *amicus curiae*) concede that these suits, although obviously affecting and involving ERISA plans and their trustees, are not preempted by ERISA § 514(a).

[486 U.S. at 833] 108 S.Ct. at 2187 (footnote omitted).

We feel that professional malpractice actions brought by a plan are directly analogous to the situation in *Mackey,* and that, in the absence of an explicit corresponding provision in ERISA allowing a professional malpractice cause of action, Congress did not intend to preempt a whole panoply of state law in this area. Thus, we conclude that ERISA does not generally preempt state professional malpractice actions.

*Id.* at 1153 n. 7.

In *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531 (7th Cir.1991), the Seventh Circuit also refused to find an implied cause of action under ERISA for malpractice by an actuary.

[W]e recognize that allowing suits against negligent non-administrators who misrepresent the financial health of an ERISA plan ... might give the actuaries and accountants who complete these documents an additional incentive to complete their reports with the degree of care expected of the reasonable professional. However, the interest ERISA beneficiaries have in competent plan consultants is already vindicated by the availability of state-law malpractice suits brought by beneficiaries who rely on misrepresented information contained in annual reports when the substance of these reports is disseminated to beneficiaries as required under ERISA.

*Id.* at 540. Federal district courts in the First, Second, and Third Circuits have also held that ERISA does not preempt mal-

practice claims. *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund,* 785 F.Supp. 536, 543 (W.D.Pa.1992) (A "claim of negligence against the accountant and actuaries, which really amounts to a claim of malpractice, would seem to be a matter of state concern which neither impacts upon ERISA nor is governed by ERISA. The fact that the entity to which accountants and/or actuaries are rendering services is an ERISA plan is merely incidental to a claim that they negligently rendered those services."); *Framingham Union Hospital, Inc. v. Travelers Insurance Co.,* 721 F.Supp. 1478, 1490 (D.Mass.1989) ("None of [the accountant malpractice] causes of action purports to impact the administration of the Plan, provision of benefits or any like concern of ERISA. The possibility that the terms of ERISA or the Plan may be evidence of certain aspects of the claim does not mandate their preemption."); *Isaacs v. Group Health, Inc.,* 668 F.Supp. 306, 312–13 (S.D.N.Y.1987) (action against plan's actuary not preempted).

### III. *The Parties Arguments*

Defendants rely primarily on *Consolidated Beef.* Defendants argue that plaintiffs' state law claims "relate to" an ERISA plan within the "normal sense of that phrase." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Defendants point out that the state law claims asserted in the complaints are based solely on the actuarial services provided to the ERISA plan. Defendants note that the reason that any actuary was retained is because ERISA requires it. Moreover, the actuarial valuation that is alleged to have been incorrectly performed is a valuation that is required by ERISA. Defendants conclude that the heart of plaintiffs' claim involves a function that is central to federal legal requirements for an ERISA plan and, accordingly, all of plaintiffs' state law claims "relate to" an ERISA plan and are preempted.

Defendants also offer several reasons why the Court should not follow *Anoka Orthopaedic Associates, P.A. v. Mutschler,* 773 F.Supp. 158 (D.Minn.1991).

First, defendants point out that *Mutschler* was decided two months prior to *Consolidated Beef* and, to the extent that there is any inconsistency between the decisions, *Consolidated Beef* controls. Second, defendants argue that plaintiffs misconstrue *Consolidated Beef* by representing that it turns on a distinction between claims for improper plan administration as opposed to claims for other acts of negligence. Although defendants admit that the weight of authority in other jurisdictions is to the contrary, defendants argue that malpractice claims, whether they arise out of administration of the plan or not, still "relate to" the plan and are preempted. Finally, defendants argue that allowing the malpractice claims to proceed would undermine the purposes of ERISA. Defendants argue that the primary purpose of ERISA is to provide specific rights and certainty to plan participants, and to provide the uniformity of federal law in this area. Defendants argue if the courts allow professionals providing actuarial services, required by ERISA, to be subjected to claims determined according to varying state laws, it will undermine Congress' goal of bringing uniformity to the area of employee benefit plans.

Plaintiffs rely primarily on the case law which is directly on point and favors their position. In addition, plaintiffs assert that general ERISA preemption principles support their argument that malpractice claims are not preempted. Plaintiffs cite *Mackey v. Lanier Collection Agency & Service*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), which noted that "lawsuits *against* ERISA plans for run-of-the-mill state-law claims," including suits by an attorney to collect fees, are not preempted.

*Id.*, 486 U.S. at 833 & n. 8, 108 S.Ct. at 2187 & n. 8 (emphasis added). Plaintiffs argue that it would be unfair to allow an attorney to sue the plan for an unpaid bill, yet prevent the plan from suing the attorney for malpractice. Finally, plaintiffs argue that *Consolidated Beef* is not controlling because it did not address the precise issue presented by this case. Plaintiffs urge the Court to adopt the position taken by every court that has addressed this precise issue.

■ The Court finds that ERISA does not preempt malpractice claims for several reasons. First, *Consolidated Beef* is distinguishable. *Consolidated Beef* holds that claims for improper plan administration are preempted. 949 F.2d at 963. The court found that despite plaintiff's attempts to characterize the claims a arising out of pre-plan actions, the "primary concern" was whether the plan was properly administered. In this case, plaintiffs are not alleging that defendants improperly administered the plan, but rather that defendants provided the administrators of the plan with incorrect information. Although ERISA requires the plan to retain an enrolled actuary, that does not mean that ERISA supplies the only standard by which to measure defendants' conduct. *Isaacs v. Group Health, Inc.*, 668 F.Supp. 306, 312–13 (S.D.N.Y.1987).[1] Furthermore, *Anoka Orthopaedic Associates, P.A. v. Mutschler*, 773 F.Supp. 158 (D.Minn.1991), is persuasive authority from this jurisdiction that ERISA does not preempt malpractice claims, and although *Consolidated Beef* was decided subsequently, it does not compel a contrary result. Finally, it is likely that if the Court held that ERISA preempts a malpractice claim, plaintiffs would be left

---

1. The *Isaacs* court addressed this precise argument. The court stated:

Defendant MESCO argues that because its duties included the provision of "actuarial analysis and reports mandated by ERISA ... as a consequence, ERISA supplies the only standard by which to measure [MESCO's] conduct." Plaintiff's contention that if ERISA mandated that every pension fund have an attorney on retainer, the negligence of such attorney, by like reasoning, would be deemed governed by a federal common law, is well taken by this Court. MESCO has presented no cases holding that

where a federal statute requires various professional services to be performed, all acts of misfeasance or nonfeasance by professionals must be governed by a federal common law standard. Inasmuch as ERISA nowhere provides for exclusive federal jurisdiction over claims against non-fiduciary service providers who commit malpractice or breach of contract, there is no basis for this Court to find that plaintiffs' state law claims actually present questions of federal law governed exclusively by ERISA.

*Id.* at 312–13 (citations and footnotes omitted).

without a remedy. While *Consolidated Beef* states that a lack of an ERISA remedy does not preclude preemption, the Eighth Circuit left the door open to consider this factor in appropriate circumstances. 949 F.2d at 964. *See also Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). The Court finds that the possibility that plaintiffs may be left without a remedy for defendants' alleged $3 million mistake is a relevant factor and weighs against a finding of preemption.

The second reason that the Court has concluded ERISA does not preempt plaintiffs' claims is that, allowing a malpractice claim to proceed will not undermine the congressional purpose of uniformity. To the contrary, to bar such an action would assume a congressional purpose that is far from clear. *See Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1152–53 (3d Cir.1989) ("[S]tate law has traditionally prescribed the standards of professional liability and, in the absence of clear indicia in the act or legislative history, we are reluctant to ascribe to Congress an intention to intrude in this area."); *Framingham Union Hospital, Inc. v. Travelers Ins. Co.*, 721 F.Supp. 1478, 1490 (D.Mass 1989) ("[T]here is an assumption that the historic police powers of the States are not superseded by a federal enactment, unless this is clearly Congress' intent.").

Third, *Mackey v. Lanier Collection Agency & Service*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), supports the conclusion that the Supreme Court would not find malpractice claims preempted. *See Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1153 n. 7 (3d Cir.1989). In *Mackey*, the Supreme Court noted that there are certain "run-of-the-mill state-law claims" that "although obviously affecting and involving ERISA plans ... are not pre-empted." *Id.*, 486 U.S. at 833, 108 S.Ct. at 2187. In this case, although the actuarial services provided by defendants involved the plan, defendants were not responsible for administration of the plan. The Court finds that professional malpractice claims "relate to" the administration of the plan only in a "peripheral" manner and are not preempted. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). *See also Isaacs v. Group Health, Inc.*, 668 F.Supp. 306, 312 (S.D.N.Y.1987).

In short, the Court believes that if the Eighth Circuit were presented with this precise issue, it would agree with every court that has addressed this issue and would conclude that professional malpractice claims are not preempted.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that defendants' motions to dismiss are denied.