_____

No. 94-2266ND
_____

Selma Fink; Craig Fink, as           *
Personal Representative of the       *
Estate of Stanley Fink; Young        *
America, Inc.,                       *
                                     *
                    Appellants,      *
                                     *
        v.                           *
                                     *
Union Central Life Insurance         *
Company; Jack Pankow,                *
individually and as agent of         *
Union Central Life Insurance         *
Company,                             *
                                     *
                    Appellees.       *

_____                          Appeals from the United States
                                         District Court for the District
No. 94-3526ND                            of North Dakota.
_____

Selma Fink; Craig Fink, as           *
Personal Representative of the       *
Estate of Stanley Fink; Young        *
America, Inc.,                       *
                                     *
           Plaintiffs-Appellees,     *
                                     *
        v.                           *
                                     *
Union Central Life Insurance         *
Company;                             *
                                     *
           Defendant-Appellant,      *
                                     *
Jack Pankow, individually and        *
as agent of the Union Central        *
Life Insurance Company,              *
                                     *
           Defendant.                *

                                         _____

                    Submitted:  May 17, 1996

                    Filed:  August 29, 1996
                                         _____

Before RICHARD S. ARNOLD, Chief Judge, and JOHN R. GIBSON and FAGG,
      Circuit Judges.
                        _____

FAGG, Circuit Judge.

      Jack Pankow, an insurance agent, sold Young America, Inc. (Young America) a Manhattan Life Insurance Company (Manhattan Life) group life insurance policy that provided coverage for certain Young America officers and employees.  The group policy was an employee benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (1994), and Young America was the plan administrator.  Young America's Chief Executive Officer, Stanley Fink, had $300,000 of coverage under the policy.  Stanley named his wife Selma as the beneficiary.  Manhattan Life later transferred the policy to Union Central, which cancelled the Manhattan Life policy and issued Young America a similar policy written by Union Central.  In March 1991, when Stanley was approaching the maximum age of eligibility for the group policy, Stanley's son Craig telephoned Union Central to discuss converting Stanley's coverage into an individual policy. A Union Central employee informed Craig that Stanley would be covered under the group policy until June 1, 1991.  After Stanley died on May 15, 1991, Union Central rejected Selma's claim for the $300,000 death benefit, claiming Stanley had not been eligible to participate in the group policy at the time of his death because he was not an active, full-time employee of Young America.  Young America, Selma, and Craig, as personal representative of Stanley's estate (collectively the Finks), then brought various claims against Union Central and Pankow.  The district court granted summary judgment for Union Central on the Finks' claims for wrongful denial of ERISA benefits, equitable estoppel, and breach of fiduciary duty.  The district court also granted summary judgment for Pankow on the Finks' claims against him for misrepresentation and intentional and negligent infliction of

-2-

emotional distress. The Finks appeal the grant of summary judgment on all these claims. Also, the district court denied Union Central's application for attorney's fees and costs under 29 U.S.C. § 1132 (g)(1), and Union Central cross-appeals the denial of its application. We affirm.

The Finks first contend the district court improperly granted summary judgment on their claim for wrongful denial of pension benefits, see 29 U.S.C. § 1132(a)(1)(B), because the record shows there are material fact disputes about whether Stanley met the policy requirement of active, full-time employment and was eligible for coverage. We disagree. When an ERISA plan fiduciary, like Union Central, has authority to determine eligibility for an ERISA benefit plan or to interpret plan terms, the fiduciary's refusal to pay benefits under the plan is reviewed for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The district court reviewed Union Central's decision under the abuse-of-discretion standard, and the Finks do not dispute that standard of review on appeal. Union Central did not abuse its discretion unless its refusal to pay benefits was "`extraordinarily imprudent or extremely unreasonable.'" Lickteig v. Business Men's Assurance Co. of Am., 61 F.3d 579, 583 (8th Cir. 1995) (quoted case omitted). Having considered the record de novo, we agree with the district court that Union Central did not abuse its discretion in denying benefits for Stanley. Id. (court of appeals reviews district court's application of deferential standard de novo).

Union Central thoroughly investigated Selma's claim for benefits and discovered overwhelming evidence that Stanley was not an active, full-time employee at the time of his death. To qualify as "active" under the policy's terms, an employee must work at the employer's regular place of employment or at some other place where the regular business operations of the employer require that employee to go. Union Central learned that Stanley spent most of the year in Arizona, not at Young America's regular place of

business in North Dakota, and the Finks presented no evidence that Young America asked Stanley to go to Arizona for business reasons. Further, the policy provides that employees must be scheduled to work at least thirty hours a week and must be on the employer's regular payroll to be "full-time." Stanley, however, led a semi-retired lifestyle. His primary contacts with Young America were summer visits to the North Dakota offices and frequent phone calls to his sons, the corporation's active managers. Union Central also obtained tax records showing Stanley's salary dropped sharply after 1988 and he began receiving social security payments. Despite being given an opportunity to respond to Union Central's concerns, the Finks did not provide Union Central with evidence showing Stanley regularly worked thirty hours a week and was on Young America's regular payroll for that work. Although Stanley was still considered the corporation's Chief Executive Officer, the group policy specifically provides that corporate officers are not eligible for coverage solely due to their titles, but must be active, full-time employees. Considering the information available to Union Central when it denied Selma's claim for benefits, see Ravenscraft v. Hy-Vee Employee Benefit Plan & Trust, 85 F.3d 398, 402 (8th Cir. 1996), Union Central's denial was not an abuse of discretion.

The Finks next contend that even if the denial of benefits was consistent with the policy's terms, Union Central should be estopped from denying benefits because Union Central misled them about Stanley's eligibility. The Finks argue that before Union Central rewrote the policy, it informed Young America that eligibility requirements would remain the same as in the Manhattan Life policy, but Union Central in fact added the requirement that corporate officers must be active, full-time employees. The Finks also assert the Union Central employee Craig Fink spoke to on the telephone misled Craig by telling him Stanley would be insured under the group policy until June 1, 1996. The Finks' estoppel claims fail because common-law estoppel principles cannot be used

to obtain ERISA benefits that are not payable under the terms of the ERISA plan.  See Jensen v. SIPCO, Inc., 38 F.3d 945, 953 (8th Cir. 1994), cert. denied, 115 S. Ct. 1428 (1995).  Courts may apply the doctrine of estoppel in ERISA cases only to interpret ambiguous plan terms, and the Finks do not argue the eligibility requirements are ambiguous.  Slice v. Sons of Norway, 34 F.3d 630, 634-35 (8th Cir. 1994).  Unlike the Finks, we do not think the availability of estoppel principles in ERISA cases depends on whether the benefit plan's financial soundness would be affected by ordering the payment of benefits.  See id. at 633-34.

We also reject the Finks' claim that Union Central breached its fiduciary duties by failing to train Young America, the plan administrator; by accepting premium payments on Stanley's behalf without verifying Stanley's eligibility; and by failing to provide Craig Fink with complete information about Stanley's status when Craig called Union Central.  First, Union Central had no duty to train or supervise Young America because Union Central did not have the authority to select or remove the plan administrator.  Leigh v. Engle, 727 F.2d 113, 135 (7th Cir. 1984); see American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the United States, 841 F.2d 658, 665 (5th Cir. 1988). Second, the undisputed evidence shows Young America was responsible for determining employee eligibility and updating Union Central about which employees were covered by the group policy.  See 29 U.S.C. § 1105(c) (allowing co-fiduciaries to divide fiduciary duties and liability).  Young America represented to Union Central that Stanley was eligible, and Union Central had no reason to think otherwise.  Although Craig testified he called Union Central because Stanley was about to turn seventy and planned to retire, the Finks presented no evidence Craig informed Union Central that Stanley had already moved to Arizona and scaled back his work hours. What the Union Central employee told Craig was true and complete based on the information available to Union Central. Cf. Eddy v. Colonial Life Ins. Co. of Am., 919 F.2d 747, 751 & n.3

(D.C. Cir. 1990) (insurer had duty to inform plaintiff about conversion rights because plaintiff told insurer his coverage under group policy was ending).  In short, the Finks' assertions are insufficient to show a breach of fiduciary duty.

We now turn to the Finks' misrepresentation and infliction of emotional distress claims against Pankow.  The district court concluded the Finks' state common-law claims against Pankow were preempted by 29 U.S.C. § 1144(a) because the claims related to the group insurance plan.  See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138-39 (1990).  The Finks argue their state law claims affect the insurance plan in too tenuous, remote, or peripheral a manner to be preempted, because the claims are based on misrepresentations Pankow made during the sale of the Manhattan Life policy to Young America, before Young America began administering the policy for its employees.  See Consolidated Beef Indus., Inc. v. New York Life Ins. Co., 949 F.2d 960, 963 (8th Cir. 1991), cert. denied, 503 U.S. 985 (1992).  We think the claims are probably preempted, see id. at 964, but summary judgment would be proper anyway because there is no evidence Pankow acted wrongfully during the sale of the Manhattan Life policy.  It is the Finks' position that Stanley was covered under the Manhattan Life policy, and Union Central added the active, full-time employment requirement for officers.  Pankow presented undisputed evidence that he did not even know the group policy was transferred to Union Central until about two years after the transfer.  We conclude the Finks have not presented evidence to show Pankow made misrepresentations about the policy or caused the Finks emotional distress.

The district court also treated the Finks' misrepresentation and infliction of emotional distress claims against Pankow as ERISA claims for breach of fiduciary duty.  See Slice v. Sons of Norway, 978 F.2d 1045, 1046 (8th Cir. 1992) (per curiam) (when ERISA preempts state law claims, court should consider whether claims

state cause of action under ERISA or federal common law). As the district court correctly concluded, Pankow did not act in a fiduciary capacity toward the Finks. Individuals "who provide professional services to plan administrators `are not ERISA fiduciaries unless they "transcend the normal role" and exercise discretionary authority.'" Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 217-18 (8th Cir. 1993) (quoting Martin v. Feilen, 965 F.2d 660, 669 (8th Cir. 1992), cert. denied, 506 U.S. 1054 (1993)). Insurance agents can become fiduciaries by participating in the administration of a benefit plan, managing the plan's assets, or providing investment advice for compensation about the plan's money or property. See 29 U.S.C. § 1002(21)(A) (defining fiduciary); Olson v. E.F. Hutton & Co., 957 F.2d 622, 626 (8th Cir. 1992). According to the Finks, Pankow understood their insurance needs and recommended the Manhattan Life policy as the one Young America should purchase, and Pankow helped Selma apply for Stanley's death benefit. These assertions are not enough to show Pankow crossed the line between insurance broker and fiduciary. Like the insurance agent in Consolidated Beef Industries, Pankow was not involved in plan administration or investments, but "was merely a salesperson earning commissions and not a fiduciary under ERISA." 949 F.2d at 965. As a nonfiduciary, Pankow is not liable for damages under ERISA, and the Finks' complaint requests only a damages award. Firstier Bank v. Zeller, 16 F.3d 907, 914 (8th Cir.), cert. denied, 115 S. Ct. 194 (1994).

Although the Finks make a passing reference to federal common law in their appellate brief, they do not develop an argument that federal common law provides them a cause of action against Pankow. At any rate, we would not use federal common law to allow a damages claim against a nonfiduciary because ERISA's carefully drafted enforcement provisions "provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985). Federal common law may be used

-7-

to fill gaps in ERISA, <u>Anderson v. John Morrell & Co.</u>, 830 F.2d 872, 877 (8th Cir. 1987), but not to upset Congress's policy choices.

Turning to Union Central's cross-appeal, we conclude the district court did not abuse its discretion in denying Union Central's application under 29 U.S.C. § 1132(g)(1) for attorney's fees and costs. <u>See Consolidated Beef Indus.</u>, 949 F.2d at 966. Contrary to Union Central's contention, the district court adequately considered the factors set out in <u>Lawrence v. Westerhaus</u>, 749 F.2d 494, 495-96 (8th Cir. 1984) (per curiam).

Because the Finks' ERISA and state common-law claims fail as a matter of law, summary judgment was proper, and the district court did not abuse its discretion in denying Union Central's 29 U.S.C. § 1132 (g)(1) application for fees and costs. We affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-