Lisa KNIGHT, Plaintiff,

v.

CENDANT CORPORATION
and Continental Casualty
Company, Defendants.

No. 97–3041.

United States District Court,
D. South Dakota,
Central Division.

June 29, 1999.

Charles Rick Johnson, Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, SD, for plaintiff.

Brett M. Koenecke, Schmidt, Schroyer & Moreno, Pierre, SD, for Cendant Corporation, defendant.

Charles M. Thompson, May, Adam, Gerdes & Thompson, Pierre, SD, for Continental Casualty Company, defendants.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

KORNMANN, District Judge.

[¶ 1] Defendants filed motions for summary judgment, Docs. 58 and 61. The Court advised the parties during the pretrial conference on May 10, 1999, that the Court would deny the motions and issue a written opinion at a later date. The Court now denies the motions for summary judgment for the reasons stated herein.

### I. BACKGROUND

[¶ 2] Knight originally brought this action in South Dakota state court, stating claims for breach of contract and misrepresentation under state law. Knight was an employee of HFS, Inc. when she was diagnosed with a disabling disease. Knight's claims for short-term and long-term disability benefits under HFS's employee benefits plan were denied in October 1996. The action was removed to federal court because Knight's claims under state law are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et al. *See* 29 U.S.C. § 1144(a). Cendant Corporation is the successor by merger of HFS, Inc. and was substituted as a party defendant for HFS, Inc. in this case. (Doc. 44.) At the time of the merger, Cendant assumed all liabilities of. HFS, Inc., including any liability in this action. Continental Casualty Company ("CCC") of Chicago, Illinois, was added as a party to this action because it was the insurer for the disability benefits under HFS, Inc.'s employee benefits plan at issue herein. (Doc. 42.)

[¶ 3] Knight was employed by HFS, Inc. ("HFS") from January 1995 to October 1995, during which employment Knight did not elect to participate in the employee benefits plan. Knight terminated her em-ployment with HFS in October 1995 and was rehired in January 1996. When she was rehired, Knight elected to participate in HFS's employee benefits plan. Knight applied for medical, dental, short term disability ("STD") and long term disability ("LTD") benefits. Knight verifies she was informed by Bonita Eveland, an employee of HFS's Human Resources Department, that her benefits would be effective February 1, 1996. Knight states Eveland informed her at the time of her rehiring that Eveland had checked with the insurer and the insurer said the 60–day waiting period contained in the benefits plan would not apply to Knight because she was a rehired employee who had previously completed the 60–day waiting period. Eveland testified in her deposition that at the time of Knight's rehiring she called Jim LaBella, Cendant's Director of Compensation and Benefits who works at Cendant's home office in New Jersey, to inquire whether Knight had to wait 60 days for her insurance benefits to be effective. (Cendant's Memorandum of Law in Support of Motion for Summary Judgment, Doc. 59, Exhibit C at page 11.) Eveland testified that LaBella said the 60–day waiting period would be waived for Knight. (*Id.*) Eveland relied upon LaBella's waiver of the 60–day waiting period by writing the effective date of Knight's coverage, February 1, 1996, on the form sent to payroll, indicating Knight was insured and that payroll deductions to pay premiums should begin on February 1, 1996. (*Id.* at page 13; and Plaintiff's Brief, Doc. 64, Deposition Exhibit 12.) Premiums in the amount of $5.54 for STD benefits and $.92 for LTD benefits were deducted from Knight's bi-weekly paychecks, beginning on February 9, 1996, and continuing through September 20, 1996. (Doc. 64, Deposition Exhibit 19; Amended Affidavit of Lisa Knight, Doc. 32, Exhibits 9 and 10.) On the enrollment form for Knight's medical insurance, Eveland wrote the effective date of Knight's coverage was February 1, 1996. (Doc. 64, Deposition Exhibit 9.) In the letter denying Knight's claim for STD and LTD bene-

fits, LaBella stated "[d]ue to human error, you were allowed to enroll in the STD program effective February 1, 1996, instead of the correct date of April 1, 1996." (*Id.*, Deposition Exhibit 17). CCC's letter denying Knight's claim for LTD benefits states HFS "indicated premiums were withheld in error prior to [April 1, 1996] and will be refunded appropriately." (Doc. 32, Exhibit 5).

[¶ 4] The benefits plan regarding STD and LTD benefits states that "[a]ll regular, full-time employees with 60 days of continuous service with the Employer" are eligible for STD benefits. (Doc. 59, Exhibit A at CC 46 and Exhibit B at CC 62.) The plan further states that for any employee who becomes eligible for insurance after August 1, 1994, such employee's "insurance will take effect on the first day of the month that falls on or next follows the date You become eligible for this insurance." .(*Id.*) The plan does not contain a specific provision regarding rehired employees.

[¶ 5] Plaintiff was a regular, full-time employee as defined in the plan (*id.*), because she worked at least 30 hours per week. She sought medical treatment on March 26, 1996, for what she thought was a flare-up of an old arthritic condition. Her condition was eventually diagnosed in September 1996 as psychogenic movement disorder (also referred to as muscle fasciolation). (Doc. 32, at ¶ 8 and Exhibit 4.) This condition causes tremors and spastic jerks in Knight's body. (*Id.*) To Knight's knowledge, all medical expenses related to her treatment from March 1996 to September 1996 were paid according to the terms of HFS's benefits plan (although CCC apparently was not the insurer of the medical portion of HFS's benefits plan).

[¶ 6] Knight's application for disability benefits was denied by CCC. (Doc. 32, Exhibit 5.) She was informed by CCC and LaBella that the effective date of her coverage was April 1, 1996. (Doc. 32, Exhibits 5 and 6.) Knight states in her Amended Affidavit that if she had known the benefits would not have been effective until April 1, 1996, she would have delayed seeking medical care for any conditions until coverage was in effect. (Doc. 32, at ¶ 5.) She further states she did not have any health conditions that required immediate medical care prior to April 1, 1996. (Doc. 32, at ¶ 6.) Knight believed the symptoms she experienced in February and March 1996 were related to her past history of rheumatoid arthritis. (*Id.*) Neither Cendant nor CCC pointed to any evidence to indicate Knight could not have waited until April 1, 1996, to seek medical care.

## II. DECISION

[¶ 7] Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992) (quoting Fed.R.Civ.P. 56(e)).

[¶ 8] Knight brings this action pursuant to 29 U.S.C. § 1132(a) which provides that a participant in an employee benefit plan may bring a civil action to recover benefits due her under the terms of the plan, to enforce her rights under the terms of the plan or to clarify her rights to future benefits under the terms of the plan. The Eighth Circuit held the doctrine of equitable estoppel can only be applied in ERISA cases to interpret ambiguous plan terms. *Fink v. Union Cent. Life Ins., Co.*, 94 F.3d 489, 492 (8th Cir. 1996). "A contract is ambiguous when it is

reasonably susceptible to more than one interpretation." *Wilson v. Prudential Ins. Co.,* 97 F.3d 1010, 1013 (8th Cir.1996). Plainly stated terms in ERISA plans "should be accorded their ordinary, and not specialized, meanings." *Brewer v. Lincoln Nat'l Life Ins. Co.,* 921 F.2d 150, 154 (8th Cir.1990), *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991). In construing a contract the Court must "construe each provision consistently with the others and as part of an integrated whole so as to render none of them nugatory and to avoid illusory promises." *Wilson,* 97 F.3d at 1013.

■ [¶ 9] The Court concludes the plan is reasonably susceptible to two interpretations: one, that Knight's disability coverage was effective February 1, 1996, and, two, that it was effective April 1, 1996. The plan states that "[a]ll regular, full-time employees with 60 days of continuous service with the Employer" are eligible for STD and LTD benefits. (Doc. 59, Exhibit A, at CC 46; Exhibit B at CC 62.) The plan does not answer the question of whether the 60–day waiting period applies to employees who have had "60 days of continuous service with the Employer" who later quit and are then rehired. A reasonable and plausible interpretation of the plan is that employees who have had "60 days of continuous service with the Employer" who later quit and are then rehired do not have to wait an additional 60 days after they are rehired to become eligible for benefits under the plan. This may well be designed to attract former trained and experienced employees to return to work. Prior to Knight's submission of her claim for STD and LTD benefits it appears Cendant and CCC interpreted the plan in this way such that Knight was eligible "on the first day of the month that [fell] on or next follow[ed] the date" (*Id.*) of her rehire, which would have been February 1, 1996. This interpretation does not render nugatory any other provision of the plan.

[¶ 10] A second possible interpretation of the plan, which Cendant and CCC adopted only after Knight submitted her claim for STD and LTD benefits, is that the "60 days of continuous service with the Employer" must be met each time an employee is hired or rehired. This is also a plausible interpretation of the plan in the absence of any specific language in the plan regarding rehired employees. Pursuant to this interpretation, Knight's disability coverage would have been effective April 1, 1996. (*Id.*) Given the Court's conclusion that HFS's employee benefits plan regarding STD and LTD benefits is ambiguous, the doctrine of equitable estoppel may be applied to interpret the ambiguous plan terms in this case. *Fink,* 94 F.3d at 492.

■ [¶ 11] The principle of equitable estoppel "precludes a party from denying a representation upon which another person has reasonably and detrimentally relied." *Geissal v. Moore Med. Corp.,* 114 F.3d 1458, 1466 (8th Cir.1997), *rev'd on other grounds,* 524 U.S. 74, 118 S.Ct. 1869, 141 L.Ed.2d 64 (1998). The Eighth Circuit held in *Geissal,* that "[t]o succeed on an equitable estoppel claim premised upon foregone insurance coverage, a plaintiff must demonstrate that alternative insurance was available." 114 F.3d at 1466. Cendant and CCC contend that pursuant to *Geissal,* Knight must demonstrate she could have obtained alternative insurance to survive summary judgment and that she has failed to make such a showing. The Court concludes Knight is not required to show alternative insurance was available because Knight's equitable estoppel claim is *not* "premised upon foregone insurance coverage." Knight is not contending she would or could have obtained alternative insurance if her coverage had not been effective as of February 1, 1996, as represented by Eveland. Rather, Knight's equitable estoppel claim is premised upon her assertion that she would not have obtained medical care for her non-emergency condition until after April 1, 1996, if Eveland had not informed her that her benefits were effective February 1, 1996.

[¶ 12] The Court finds there are genuine issues of material fact regarding the issues of whether Knight reasonably and detrimentally relied upon Eveland's representation that Knight's benefits were effective February 1, 1996. Knight was aware of the 60–day waiting period in the plan, and specifically asked the only employee in the human resources department in South Dakota about the application of the waiting period. Eveland informed Knight that after having contacted the insurer, the 60–day waiting period was waived because Knight was a rehired employee. All of the paperwork Knight received indicated an effective date of insurance of February 1, 1996. The medical expenses Knight incurred prior to April 1, 1996, were paid pursuant to the medical benefits under HFS's employee benefits plan. The plan did not contain any specific reference to rehired employees. Moreover, the premiums for Knight's benefits, including STD and LTD benefits, were deducted from her paycheck beginning in February 1996. These facts certainly create a genuine issue of material fact on the issue of whether Knight *reasonably* relied upon Eveland's representation.

[¶ 13] As to detrimental reliance, Knight contends she would have waited until after April 1, 1996, to seek medical care for her non-emergency condition if Eveland had not informed her that her benefits were effective February 1, 1996. Knight first sought treatment on March 26, 1996 for the condition which was eventually diagnosed in September 1996. It appears from the medical records and Knight's amended affidavit that Knight could have clearly waited until after April 1, 1996, to seek medical treatment for her symptoms. There is no evidence in the record to show that Knight could not have waited until at least April 1, 1996, to seek treatment for this condition. The Court finds there is a genuine issue of material fact regarding whether Knight *detrimentally* relied upon Eveland's representation regarding the effective date of coverage.

## III. CONCLUSION

[¶ 14] The Court concludes the employee benefits plan at issue herein is ambiguous and, therefore, the doctrine of equitable estoppel may be applied to interpret the ambiguous plan terms in this case. The Court further finds that genuine issues of material fact exist for trial in this case on Knight's equitable estoppel claim. The Court will, therefore, deny Cendant's and CCC's motions for summary judgment.

[¶ 15] Now, therefore,

[¶ 16] IT IS ORDERED:

(1) Defendant Cendant Corporation's Motion for Summary Judgment, Doc. 58, is denied.

(2) Defendant Continental Casualty Company's Motion for Summary Judgment, Doc. 61, is denied.

[¶ 17] Dated this 22nd day of June, 1999.